[PHILADELPHIA JANUARY 9, 1832.]

## Case of JOSEPH WALKER'S Etate.

APPEAL.

The original and all the supplementary accounts of an executor constitute parts of one whole, and taken together, contain an exhibit of the proceedings of the executor in relation to the estate; and although it may sometimes be expedient to file exceptions to the different accounts, as they are from time to time settled, yet it is unnecessary to do so, the whole being open to exceptions, until the final adjustment of the estate.

The Orphan's Court ought, therefore, on the final settlement of the estate, to examine into the subject-matter of the exceptions then filed to the preceding accounts, although the settlement of such accounts may have been duly published, confirmed *nisi,* and afterwards confirmed absolutely, in consequence of no exceptions having been filed within the time prescribed by the rules of court.

*It seems,* however, that if the parties have been heard in the Orphan's Court, a re-investigation by that court cannot be required, except, perhaps, on a petition in the nature of a bill of review, which can only be necessary after the final decree.

No appeal lies from the decree of the Orphan's Court to the Supreme Court, except upon the settlement of the final account of the estate, and upon the appeal, the Supreme Court may examine into the exceptions to the original and supplementary, as well as the final account. The appeal brings up the whole case for examination.

What is a final decree of the Orphan's Court.on an administration account.

*It seems,* the Orphan's Court may make a final decree, so as to discharge the executor, although there may be outstanding debts due to the estate, but this should be done with great caution, and not without express notice at least to the legal representatives.

Where a son continues with his father after he has arrived at full age, and is supported by him, without any contract to be paid for his services, but with a view to a provision by will, he cannot, in general, after the death of his father, support a claim against his estate, for a compensation for labour, &c. It must be a strong case to induce the court to listen to such a claim.

And where the services were rendered at so distant a period as to be barred by the act of limitations, and a settlement appears to have taken place between the father and son, it is to be presumed, that all accounts between them were settled, and the son cannot afterwards, as his father's executor, take credit for such claim in his administration account.

Still less can he do so, where it appears, that at the settlement, the claim was asserted by the son, and withdrawn on being objected to by the father.

Where this court has any doubts as to the facts of a case, coming before it on an appeal from the Orphan's Court, it will direct an issue to try them; but it will refuse to do so, where the parties have had abundant time to furnish the court with the necessary testimony, and the facts, from what appears to the court, are involved in no doubt.

Interest cannot be allowed to an executor on the balance of his administration account, where the effect of it is, to give him compound interest, which cannot be permitted under any circumstances.

THIS case came before the court on an appeal from the decision of KENNEDY, J. holding a circuit court for *Chester* county, on the 24th *August,* 1831, affirming *pro forma,* and without prejudice, the decree of the Orphan's Court of that county.

After argument by *Dillingham,* for the appellants, and *Bell* and *Tilghman, contra.*

(Case of Joseph Walker's Estate.)

The opinion of the court, which presents all the material facts and the points of the case, was delivered by

ROGERS, J.—On the 20th *March*, 1821, *Thomas Walker*, who was the executor of *Joseph Walker*, filed an account in the Office of the Register of *Chester* county, which on the 30th *April*, 1821, was confirmed *nisi*. It is headed, ' The account of *Thomas Walker*, one of the executors of *Joseph Walker*, late of the township of *Tredyffryn*, in the county of *Chester*, deceased.' The account, among other tems, contains the following. " By balance due from *Joseph Walker*, the testator, to the accountant per settlement, 12th of twelfth month, 1817, three thousand seven hundred and sixty dollars. By interest thereon, from thence to the 29th of third month, 1821, seven hundred and thirty-three dollars and twenty cents. By amount due from the said deceased to the accountant for labour and superintendence, from the 29th of twelfth month, 1778, till 29th of third month, 1789, being ten years, and three months, at one hundred and twenty dollars per year, with interest thereon, till the 29th of third month, 1821, three thousand nine hundred and thirty dollars and sixty cents." The accountant charges himself with one thousand two hundred and one dollars and sixty-eight cents, and takes credit for nine thousand three hundred and sixty-six dollars and fourteen cents, showing a balance against the estate of eight thousand one hundred and sixty-six dollars and forty-six cents. On the 20th *March*, 1824, he filed in the same office, a supplementary *administration account*, which was confirmed *nisi*. It is headed, the ' Supplementary administration account of *Thomas Walker*, one of the executors of the last Will and Testament of *Joseph Walker*, late of the township of *Tredyffrin*, in the county of *Chester*, deceased.' The account, among others, contains the following items : " By balance, former *account* filed and confirmed, eight thousand one hundred and sixty-six dollars and forty-six cents; three years interest on the said balance, one thousand four hundred and sixty-nine dollars and ninety-seven cents." The accountant charges himself with eight thousand four hundred and forty-nine dollars and fifty cents, and takes credit for twelve thousand five hundred and eighteen dollars and seventy-eight cents, leaving a balance of four thousand and sixty-nine dollars and twenty-eight cents. Part of this, *viz.* eight thousand four hundred and twelve dollars and sixty cents, was the proceeds of certain real estate, sold by the executor, for the payment of the ascertained balance in the former account. On the 8th *May*, 1828, upon the application of *Joseph Walker* and *John Malin*, guardians of the minor children of *Hannaniah Walker*, deceased, a citation issued from the Orphan's Court to the executor, to settle a further account. On the 8th *August*, 1828, he settled an account in the Orphan's Court, and the court granted leave to 8th *September* to file exceptions. It is headed, " The re-supplementary account of *Thomas Walker*, one of the executors of the last Will and Testament of *Joseph Walker*, late of the town-

ship of *Tredyffryn*, in the county of *Chester*, deceased." The accountant charges himself with the proceeds of certain real estate, sold for the payment of the balance in the second administration account, and also with articles taken by him at the appraisement, and which remained unsold. He prays an allowance for interest on four thousand sixty-nine dollars and twenty-eight cents, the balance due, in the former settlement, four years, two months and twenty-four days, amounting to one thousand thirty-three dollars and fifty-six cents. All the accounts were advertised in the usual manner. On the 8th *September*, 1828, the guardians filed distinct exceptions to the original account of 26th *March*, 1821, to the supplementary account of the 30th *March*, 1824, and to the re-supplementary account of the 20th *June*, 1828. They also filed additional exceptions to the accounts in which they impute fraud to the executor. On the 9th *March*, 1829, after argument, the Orphan's Court ordered the exceptions to the original account of 1821, to be dismissed, and that the supplementary account of 1824, and the re-supplementary account of 1828, with the exceptions should be committed to auditors. On the report of the auditors, on the 5th *June*, 1829, it appeared, there was a balance due the accountant of nine hundred and twenty-seven dollars. On the 9th *June*, 1829, the report was read and confirmed *nisi*. On the 3d *August*, 1829, exceptions were filed to the report of the auditors, and on the 6th *February*, 1830, the Orphan's Court made a decree, from which on the 22d *February*, 1830, the guardians appealed to the Circuit Court. On the 22th *August*, the appellant filed the following exception:

The court erred in dismissing the exceptions to the original account, and in allowance of interest upon the balance of that account, in each of the supplemental accounts; said exception being based upon an allegation of fraud against the executor. '

The 24th of *August*, they filed an additional exception:

The appellants except to the item of three thousand nine hundred and thirty-three dollars and sixty cents, for which a credit is claimed, in the first account, and to the interest claimed on this sum, in each of the subsequent accounts, the same being claimed in the face of a settlement between the executor and testator, set forth in the preceding item; waiving all other exceptions.

The executor also filed exceptions to the decree.

The 24th of *August*, 1831, Justice Kennedy, holding a circuit court for the county of *Chester*, overruled the exceptions of both parties, *pro forma*, and without prejudice, and affirmed the decree of the Orphan's Court, and on the same day both parties appealed. With a view to a hearing in the Supreme Court, the 8th of *March*, 1830, a rule was granted for a commission to take depositions of witnesses for either party, on twenty days notice to the opposite party.

The counsel for the guardians allege, that the Orphan's Court were in error in dismissing the exceptions to the original account; and upon this point, the cause has principally turned. A view of this question

also involves the right of the Supreme Court to investigate the accounts; for if we have the power, although the Orphan's Court may not, the objection will avail the executor but little. The Orphan's Court decided that they had no right to grant relief, because the account, being confirmed, it was no longer open to exception.

The original supplementary and re-supplimentary accounts, constitute parts of one whole. Taken together, they contain an exhibit of the proceedings of the executor, in relation to the estate. Viewing it as an entire transaction, as but one account, it is difficult to imagine any good reason why more sanctity should be given to one part than another. The law contemplates a final settlement of the estate in one year; but as this, in a variety of cases, is obviously impracticable, the legal representatives, and the creditors who are interested in the management of the estate, have a right to require from time to time, an account of the administration of the assets. This is indispensable, for without this remedy, the court could not be judicially informed, whether the assets were in a course of correct administration, or not; nor could the interest of the creditors, and others, be protected. And hence, the necessity, in some instances, of two or more settlements, as the exigencies of the trust may require; which by no means will be an idle and expensive ceremony, as has been argued by the counsel for the appellee; and this was the opinion of the Supreme Court, as to guardians, (who are in some respects in a similar situation,) in *Bowman* v. *The Executors of Herr*, 1 *Penn. R.* 284. By the settlement, the parties interested have an opportunity of knowing the situation of the estate. If there is reason to apprehend injury to their interest, timely measures may be taken to guard their rights. Until there is an exhibit of the whole estate, we cannot perceive the necessity, although it may sometimes be expedient, to file exceptions. It would frequently be an injury to executors and the legal representatives, to *require* a different proceeding. Many seeming errors cease to be such, on a final settlement. Mistakes may be corrected, omissions supplied, and charges, wearing the appearance of extortion, may be deemed but a bare compensation for the services rendered by the executor. It has been said, that the delay consequent on the rule, will lead to unnecessary litigation, to much inconvenience, and to danger of injustice. There is, I am persuaded, no reason to apprehend any such results. On the contrary, it is a recommendation with me, that it will prevent litigation and prove more convenient to courts and suitors. Where is the inconvenience or danger which will arise from keeping an account open to exception, until the final adjustment of the estate? And if there be, it is one to which the executor has voluntarily exposed himself, not without compensation, and which results from the nature of the trust. We are not to suppose that a person charged with so important a trust, will be so careless of the necessary receipts and vouchers, as to incur danger on that account, and if so unlikely a thing should occasionally happen, it is not the fault of the legal representatives or the creditors.

(Case of Joseph Walker's Estate.)

It is seldom required that any thing more should be preserved, than receipts for disbursements; and surely it is asking nothing that is unreasonable, that such vouchers should be preserved. Besides, in cases of real difficulty, every circumstance will be duly weighed and properly appreciated by the Orphan's Court, aided as they may be by the explanations which the executor may be permitted to give of the management of the estate. Every point will be duly considered, and if it should appear, (as there is but little to apprehend, where the executor exercises common prudence,) that an undue advantage is attempted to be taken by an artful and interested individual, the court will afford the necessary protection. No court should be anxious to guard a man from the loss which arises from carelessness and inattention, in conducting a business so important, as that entrusted to an executor. Besides, if danger should be apprehended from delay, this may be a stimulus for a speedy final adjustment of the accounts; and if such should be the result, it will prove an essential service in the settlement of decedents' estates. Procrastination is one among the evils to which persons interested in such estates, are most exposed; and it is a strong argument in favour of the policy of the act of the 8th of *February*, 1819. It is true, that from an early period in the judicial history of *Pennsylvania*, it has been the peculiar province and duty of the Orphan's Court, to examine and pass upon administration accounts, to allow and disallow, to revise and confirm them, after they have been first settled by the Register, subject to the right of appeal to the Supreme Court. This business was frequently done *ex parte;* and this, among other reasons, gave rise to the act of the 4th of *April*, 1797, which directs notice to be given, in the manner prescribed in the act. And it is equally true, that defects in the existing law, again induced the legislature to turn their attention to this interesting and all-important branch of our jurisprudence; and on the 8th of *February*, 1819, it was enacted, " that when the accounts of guardians, executors or administrators shall be *finally settled according to law*, and the same confirmed by the court, no appeal shall be taken therefrom, unless the same be entered in one year after the said confirmation." The meaning of the term " finally settled according to law," required judicial construction, and was considered in *M'Grew's* appeal, 14 *Serg. & Rawle*, 397. The words, " finally settled," says Justice Huston, " cannot be fairly applied to any other than a final account." In this opinion we all concurred, and, since that decision, the court has been in the constant practice of dismissing an appeal taken to a partial account. We have construed the act, not merely as a limitation of the right of appeal, to one year after the confirmation of the final account, but as a legislative declaration, that no apppeal shall be taken, unless the account is final. And this construction was necessary to effectuate the intention of the act, for otherwise, a final settlement would be limited to one year, but to a partial account there would be no limitation whatever. Taking the whole as but one account, seemed not only to be in con-

(Case of Joseph Walker's Estate.)

formity to the act, but greatly tending to the ease of the suitors, and the advancement of justice.   The court is more competent to decide a cause, with a view of the whole ground, than they possibly could be, if presented to them in detached parts.   This, so far from increasing litigation, will have a tendency to diminish law-suits, by expediting the final settlement of accounts, and investigating and ending the whole controversy in one suit.   And this is in analogy to the whole course of judicial proceedings, for the Supreme Court uniformly refuses to review the decisions of the inferior courts, until there is a termination of the cause in the court, of whose judgment the party complains.   If finally settled according to law, (the terms used in the act of the 8th of *February,* 1819,) mean, as has been decided, a final settlement; and we were correct in saying, that an appeal would not lie until there was a final settlement, it follows, that we must examine into the exceptions to the original account, otherwise the legal representatives and the creditors would be precluded from a review altogether.   And in several instances this has been done in the Supreme Court.   There can be no reason for more than one appeal by the same party, for this brings up the whole case for examination.   The accounts are but component parts of one whole.   Why then, should the Orphan's Court refuse to examine the subject matter of the exceptions, the consequence of which is to compel the party to seek justice, by appeal?   Here the accounts were presented, after giving due notice, and were confirmed *nisi,* in the usual manner. We are aware, that the practice has been, upon proof of the due publication of the required notice, for the court to direct, as a matter of course, that the accounts thus presented, be allowed and confirmed, unless exceptions be taken within the time prescribed by the rules and practice of the Orphan's Court.   If no exceptions be filed, it is taken as a judgment or decree by default, or by the acquiescence of the parties interested, after notice.   The act of the 4th of *April,* 1797, be it remembered, does not require personal notice.   A publication, thirty days before the time appointed for confirmation and allowance, in three of the most public places in the county, and in the Register's Office, is sufficient.

It would appear reasonable, that the Orphan's Court should incline to an investigation, which may, and in many cases will preclude the necessity of an appeal, which sometimes may be expensive, troublesome, and less satisfactory to the parties.   At any rate, the chances (of which the suitors should not be deprived,) are that fewer points will need the revision of the Supreme Court, if the parties have the opportunity of a hearing in the Orphan's Court.   A confirmation *nisi* becomes absolute, unless exceptions are filed in due time, which is any period previous to the final adjustment and decree of the court. Had the parties been heard, it would have presented a different case. It would be unreasonable to require a re-investigation, unless perhaps on a petition in the nature of a bill of review, which can be only necessary after the final decree.

(Case of Joseph Walker's Estate.)

We have next to inquire whether the administration account of the 26th of *March*, 1821, comes within the meaning of the act of the 8th of *February*, 1819.     The executor files a supplemental account, without citation, which shows that he did not consider the first account final, nor do the accounts purport to be final.' In this account, he charges himself with the proceeds of the real property sold for payment of debts, and takes credit for payments and disbursements made for the estate.     When cited to settle a re-supplementary account, he does so without objection, and charges himself with the proceeds of other real estate, and also with part of the inventory, which remained in his hands unadministered.     Nor is the decree of the court a final decree.     There is nothing in the adjudication which will give it the character of a final adjustment of the estate. Although I will not undertake to say, that the Orphan's Court may not make a final decree, notwithstanding there may be outstanding debts due the estate, so as to discharge the executor, yet this should be done with great caution, and not without express notice, at least to the legal representatives.

The guardians except to the allowance for labour, and superintendance, from the 29th of *December*, 1778, till the 29th of *March*, 1789, ten years and three months, at one hundred and twenty dollars per year, with interest till the 29th of *March*, 1821.    A settlement took place, as appears in the account itself, the 12th of *December*, 1817, and this of itself would be a satisfactory reason for disallowing a charge made by an executor.    The presumption is, that all accounts between the parties were then settled, and in the face of such a settlement, it would require strong countervailing proof to support a claim barred by the act of limitation, by a son, who is the executor, against the estate of a deceased parent.    We have not been given to understand that he had any means of support whatever, except what was derived from his father, and unless an express contract can be shown, there can be no precedent more dangerous than to permit a son to succeed in an attempt to avail himself of an account trumped up for the purpose of getting an undue share of the estate, at the expense of the other heirs.    When a son continues with a father after age, it is usually done with a view to a provision by will.    If disappointed, in perhaps his reasonable expectations, we cannot permit him to turn round, and attempt to retrieve his fortunes, by resorting to an account, on a *quantum meruit*, for services rendered the father in his life time.    Every principle of policy should induce courts to be extremely cautious in sanctioning such claims; and it must be a strong case which will induce me to listen for a moment to such a charge.    The labour of a son, after deducting the necessary expenses, may be easily estimated too high, and this of itself would be a sufficient reason to investigate the charge which the executor, after forty years, has thought proper to make against the estate of his father.    The evidence, however, independent of the geeral principle, is too pointed and plain to admit of any doubt.    *Wil-*

(Case of Joseph Walker's Estate.)

*liam Webb*, a witness, who from what appears is altogether worthy of credit, says, that he was present at the settlement, as an agent of *Joseph Walker*, who was blind. *Thomas Walker*, the son, presented two accounts, one said to be a transcript from his books, the other for services rendered his father during the Revolution, some thirty or forty years before. The account for services was first taken up. *Joseph Walker* alleged he did not owe him any thing on that account. The witness asked *Thomas*, if there was any agreement or contract, between him and his father for wages. He said there was none. *Joseph* said, that it was true he was a good worker, but that he had a horse to ride, and that he went where he pleased. *Joseph Walker* then said, that he had been the means of getting the place from *Parson Curry*. He also said, " If thee must know, I am paying interest for money that stocked that farm for thee, now ;" and he said " I have never charged thee with it, and don't mean to." *Thomas* then said, " Father, thee says thee has not charged me, nor don't mean to." *Joseph* said, "I never have, nor don't mean to." Then, said *Thomas*, "We will let one account go against the other." A memorandum was then made of the settlement, which is in these words, " 1817, *December* 12, This day *Joseph Walker*, and his son *Thomas Walker*, settled all accounts up to this time, as witness our hands; and the balance due *Thomas* is three thousand seven hundred and sixty dollars :"—Signed *Joseph Walker*, *Thomas Walker*, and witnessed by *William Webb*. The books of *Thomas Walker* have been referred to, in which an entry of the settlement was also made. I shall content myself with making no further remark upon it, than that it affords abundant proof of the truth of *William Webb*'s statement in regard to the terms of the memorandum, and also shows the reason that *Thomas Walker* desired to get the memorandum of the settlement out of the possession of the witness. The counsel for the executor have requested the court to direct an issue, and if we had any doubts about the case, we would listen to the request, or if the parties had not had abundant opportunity and time, to furnish us with the necessary testimony. Nothing has been shown to impeach the credit of *William Webb*, in the slightest degree. We cannot permit mere allegations, without proof, to have any effect on our minds. So far from not having an opportunity to investigate the facts, the constant endeavour of the executor has been, to prevent any investigation at all, on the ground that the matter has passed in *rem judicatam*.

It remains now to notice the charge of interest upon the balance of the administration account. This, the court is of opinion, cannot be allowed. The effect of it is, to give the executor compound interest, which cannot be permitted under any circumstances. There would be few estates, which could stand a process such as the one attempted by this executor.