CARHART and others *vs.* THE AUBURN GAS LIGHT
COMPANY.

22  297
122a  36
22b 297
18ap448
22b 297
24ap628

Any person interested in the use and enjoyment of the water of a running stream
is entitled to receive it pure and uncontaminated; and he may maintain an
action for any special injury sustained by him in consequence of the corruption
of the water by any other person.

Accordingly, where the plaintiffs, who were carpet manufacturers, occupied prem-
ises situated on the Owasco river, and had the right to use the waters of the
river for supplying their works, and the defendants, who were engaged in man-
ufacturing gas upon and near said stream, above the plaintiffs' works, suffered
to flow from their gas works into the river certain noxious and offensive sub-
stances and materials, and certain tarry and oily substances, which became
mingled with the water and adulterated the same as it flowed to the plaintiffs'
works, and injured the wool and other materials used by them, *it was held,*
that this was an injury for which an action would lie, by the plaintiffs.

And this, notwithstanding the defendants claimed exemption from damages and
liability on the ground that the soil on which their gas works were situated
was incompact and pervious, and was percolated by the water of the river,
without their agency or fault; and that if any noxious substances had flowed
from their works into the river it had been by the percolation of the water into
the ground occupied by them, and the reflux of said water into the river in-
termixed with such offensive substances as escaped from the gas works into
the ground, in the ordinary course of business, and without any neglect or de-
sign of the defendants.

Gas works, *it seems,* are to be placed in the class of erections which are not within
the ordinary and usual purposes to which real estate is applied; and whenever
they create a special injury they are to be regarded as a *private nuisance,* and
an action will lie in favor of the person sustaining the special injury.

APPEAL by the defendants, from an order made at a special
term, allowing a demurrer to the answer. The complaint
stated that the plaintiffs were carpet manufacturers, and occu-
pied premises situated on the Owasco river, in Auburn, and had
the right to enjoy the advantages of the water of the river, for
supplying their works with unadulterated water; yet the de-
fendants, manufacturing gas upon and near said stream, and
above the plaintiffs' works, intending to deprive them of the
water in its pure state, had suffered to flow from their gas works
into said river, certain noxious and offensive substances and ma-
terials, and certain tarry and oily substances, which became

mingled with the water and adulterated the same as it flowed to the plaintiffs' works, and was necessarily used by the plaintiffs in the process of manufacturing, and injured the wool and other materials used by the plaintiffs. The defendants answered, that the ground on which their works are situated is incompact and pervious, and is percolated by the water of the Owasco river, without their agency; and if any noxious substances have flowed from their works into said river, as stated in the complaint, it has been by the percolation of the water into the ground occupied by the defendants, and the reflux of said water into the river, intermixed and blended with such resinous, tarry and oily substances as escaped from the defendants' works into said ground, in the ordinary course of business, and with careful management, without any neglect, design or intent by the defendants to corrupt said waters. The plaintiffs demurred to this portion of the defendants' answer, and stated two grounds of demurrer. 1st. That the defendants, while assuming, in that part of their answer, to set forth a full justification of the acts complained of by the plaintiffs, had not stated facts sufficient to constitute a legal defense to this action. 2d. That the defendants had not shown that the waters of the Owasco river would have been injured, corrupted or adulterated, as stated in the complaint, if the gas works of the defendants had not been located upon the premises, and the manufacture of gas light had not been carried on by them as stated in the answer. The court, at a special term, gave judgment for the plaintiffs on demurrer, with leave to the defendants to amend on payment of costs.

*A. G. Beardsley,* for the plaintiffs. I. Every riparian proprietor has a right, inseparably annexed to the soil, to use the water running through his land, for every useful purpose to which it can be applied, as it is wont to run, without diminution or alteration. The defendants admit the erection of their gas works on the bank of the river, above the plaintiffs' premises; that the ground on which their works stand is very pervious, and is percolated by the water of the river; they do not deny

that noxious, offensive, tarry and oily substances, emanating from the gas works, flow from said works into the river; they admit that it is occasioned by the percolation of the water, and its return into the river, intermixed with such resinous, tarry and oily substances as may have escaped into the ground in the ordinary course of their business; and they do not deny that thereby the water of the river is rendered corrupt and adulterated, and unfit for the plaintiffs' use; hence it is insisted that this part of the defendants' answer furnishes no defense to the action. (*Angell on Water Courses,* 142, § 136. *Norton* v. *Scholefield,* 9 *Mees. & Welsby,* 565. *Howell* v. *McCoy,* 3 *Rawle,* 397. *Wright* v. *Williams,* 1 *Mees. & Welsby,* 77. *Tyler* v. *Wilkinson,* 4 *Mason,* 397. *Thomas* v. *Brackney,* 17 *Barb.* 654.)

II. The allegation in the answer, that the reflux of the water into the river, carrying with it the noxious, tarry and oily substances, was without any neglect, design or intent on the part of the defendants to corrupt the waters, to the injury of the plaintiffs, cannot avail the defendants, as they acknowledge acts, of which such is the direct and inevitable result. They must be held to intend what their acts necessarily produce.

*B. F. Hall,* for the defendants. I. The facts set forth in the defendants' second plea to the plaintiffs' complaint, constitute a legal defense to this action. The legal right of the defendants to occupy, enjoy and use the grounds on which their gas light factory is situated, in the way and manner that shall best accord with their own interests, is limited and qualified only by their legal obligations to their neighbors and other members of community. Their legal obligations to their neighbors and other members of community are, that they shall occupy, enjoy and use those grounds for the prosecution of their business in a "reasonable" manner. And to determine what is a reasonable manner of occupancy, enjoyment and use of grounds in a given case, the date of the occupancy with respect to the date of the occupancy of other grounds by complainants, the peculiarities, if any, of the grounds occupied, their exposure to the action of

the water of a neighboring stream, the extent to which such stream by the force of the laws of gravitation inevitably receives the sewerage of the town, the voluntary exposure and risk assumed by those who planted themselves below the grounds of which they complain, the nature and character of the business carried on upon the grounds in question, and also that carried on by others, the exercise or non-exercise of wanton carelessness on the one hand, or reasonable diligence and care on the other, together with the nature and extent of the action, upon the grounds, of foreign agencies which are beyond the control of the occupants, must be considered. All these must be considered, because they underlie and surround the occupancy and use, and give to them their legal complexion and character. To exclude them from a given case would be to veil the subject from the rays of the only light by which its reasonableness or unreasonableness may be perceived. For to determine what is reasonable in respect to men and things, we must know the attending circumstances. What is reasonable, is that which is reasonable under the circumstances. The defendants claim the protection afforded by the common law as laid down by Sir John Comyns: " That an action on the case for a nuisance does not lie for a reasonable use of one's right, though it be to the annoyance of another." (*Comyns' Digest*, 215, 305.) And to illustrate the term reasonable, the baron cited the following cases, where the occupancy was reasonable, and where an action consequently would not lie. The case of a man who dug cellars in his own grounds, and thereby caused the walls of a house situate upon adjoining land to fall down. (1 *Sid.* 167. 2 *Roll.* 565, *l.* 5.) The case of a man who dug a ditch in his waste within 36 feet of the highway, into which the horse of another fell. (1 *Roll.* 88, 30. 2 *Cro.* 159.) The case of a man who used water in his land out of a water course running through his land to the pond of another, whereby the water in the pond was diminished in quantity. (*Per St. John at Suffolk Assizes*, 1657.) This elementary doctrine has been repeatedly illustrated and applied by American courts. In the case of *Palmer* v. *Mulligan*, (3 *Caines*, 313,) where a man had erected a dam on his own

land, by which at certain seasons he withheld the water from the mills below, to the injury of their owners, Chief Justice Spencer held that the act of erecting a dam by the defendant was lawful ; and though in its consequences it was injurious to the plaintiffs, they were remediless. It was *damnum absque injuria.* Many injuries are inevitable from the establishment of one dam above another upon the same stream, such as the increase or decrease of the velocity of the current, evaporation, decrease of the quantum of water below; and yet they are *damnum absque injuria.* (3 *Caines,* 313.) In the case of *Clark* v. *Foot,* (8 *John.* 421,) it was held that a man is not liable to an action on the case for setting fire to his own fallow ground, even though the fire run into and burn the woodland of his neighbor, where there is no negligence or carelessness. In the case of *Platt* v. *Johnson & Root,* (15 *John.* 213,) which was an action for with-holding water by a dam above the plaintiffs, the remarks of Justice Spencer, in the case of *Palmer* v. *Mulligan,* are recog-nized by Justice Thompson as expressing the true rule. A man is not answerable in damages for the consequences of enjoying his own property in the way such property is usually enjoyed, unless an injury has resulted to another from the want of proper care or skill on his part. He may open and work a coal mine in his own land, though it cut off an underground stream of water which before supplied his neighbor's well, and thereby leave the well dry. (*Acton* v. *Blundell,* 12 *Mees. & Welsb.* 63, 24.) A man may build on his own land, though it stop the lights of his neighbor, and even though he build for the very purpose of stopping those lights. (*Mahan* v. *Brown,* 13 *Wend.* 261. *Parker* v. *Foote,* 19 *id.* 309.) A man may dig a pit on his own land be it never so deep, though the house of his neighbor be undermined thereby and fall into the pit. (*Panton* v. *Holland,* 17 *John.* 92.) The owners of a church edifice are not entitled to an injunction to restrain the owner of land, within six feet of the walls, from digging a cellar sixteen feet below the natural surface of the ground, and ten feet below the foundation of the church. (*Lasala* v. *Holbrook,* 4 *Paige,* 169.) No ac-tion lies for injury to a house on a hill having a foundation sunk

fifteen feet below the ancient surface of the ground, by reason of digging an adjoining lot to the depth of 30 feet below the natural surface. (*Thurston* v. *Hancock,* 12 *Mass. R.* 220.) No action lies for damages occasioned by excavations for the purpose of opening a street through adjacent lands, which, by reason of the removal of natural supports, permitted plaintiff's land to break away and fall into the pit below. Cities could not be built under an adverse doctrine. (*Radcliff's Ex'rs* v. *Mayor &c. of Brooklyn,* 4 *Comst.* 196.) Where a man dug a well on his own land and thereby appropriated the subterranean water course to his own use, to the injury of his neighbor's well, it was held that the injury was not actionable unless done with malicious intent. (18 *Pick.* 117.) Where a man had a reservoir on his land which filled by percolation, and another dug one on his land, and by percolation it reduced the water of the former, it was held not to be actionable. It was further held, that the law of surface streams does not apply to percolating water or subterranean water courses. (20 *Conn. R.* 542.) From these cases we learn that actions will not lie for injuries sustained by the acts of others who are reasonably and carefully using their own premises ; moreover, that the meaning of the term *reasonable* must be ascertained, not by any arbitrary lexicography, but by the facts and circumstances and necessities of each particular case. The plaintiffs, for example, are engaged in a species of manufacturing, which is eminently necessary and laudable ; and they employ the waters of the Owasco river in propelling their looms, and washing and coloring their wool and yarn. They bring to their works large quantities of coal for fuel, oil for greasing their machinery, and wool and dye woods for coloring ; all these, when used in the most careful manner, intermix with and soil, to some extent, the waters of the stream which flow onward to the paper mill below. The smoke from their chimneys, and the steam from their kettles and dry-rooms, escape to and condense in the atmosphere and fall upon the lately washed and drying linen hanging in the yards of their neighbors. Some trifling damage results. Yet as a certain extent of such damage is the inevitable consequences of that kind of business

Carhart *v.* Auburn Gas Light Company.

in a town, and of the aggregation of other people and other interests in the neighborhood, it becomes necessary to glean from all these circumstances the wholesome, sensible, solid definition of the word "reasonable," in reference to their occupancy and use of their premises.   The defendants, unlike the plaintiffs, are not directly upon the bank of the stream; are not propelling machinery with, nor are they in any direct manner mingling their business with and soiling, the water thereof.  Between the stream and the defendants' works there is located a road-way 20 feet broad which belongs exclusively to, and is controlled by, the state of New York.   On a small piece of ground, at its nearest point, 20 feet distant from the stream, the defendants receive from time to time, in barrels, and manufacture into an inflammable vapor for lighting the town, considerable quantities of rosin.   As well the obvious pecuniary interests as the legal obligations of the defendants to the plaintiffs, and the community, require of them the exercise of the *reasonable* care averred in the plea, that none of this is wasted, either upon the ground or in the waters of the creek.   Nevertheless, it must be presumed that in receiving and opening this rosin with the most sedulous care, infinitesimal particles of the gum do fall upon the ground, and are dissolved into the soil by the ordinary rains.   The quantity is trifling indeed, and very insignificant, even though it were all cast into the creek, which is not the case, yet the plea admits that *some* of this rosin does inevitably fall upon the defendants' ground in the handling.   The plea repels the idea of neglect or want of careful management in this particular.   It moreover avers that the emanation of said resinous substance is occasioned by foreign causes, against the defendants' wishes and interests, and without their procurement or agency.   The import of this plea therefore is, that the injury complained of by the plaintiffs is not the result of any act or negligence of the defendants, but is the inevitable consequence of the manner in which the state of New York causes the Owasco river to ebb and flow in the prison dam.   The state of New York causes or permits all the mischiefs of which the plaintiffs complain.   Here we reach the precise point on which we rest our defense.   We

claim exemption, under the circumstances, from the consequences resulting exclusively from the act or neglect of the state of New York. The plea avers " that the damages alleged in the plaintiffs' complaint, resulted from the percolation of the water of the Owasco river through the soil or grounds adjacent to the said river into the grounds occupied by the defendants' gas light works, and the reflux or return of said water into said river from the grounds so percolated, intermixed or blended with such resinous, tarry or oily substances as escaped into said grounds by accident, or in the ordinary course and operation of said business at said works, and in the ordinary and *careful management* thereof, and without any *neglect, design or intent,* on the part of the defendants, to corrupt the waters of said river, to the injury of the plaintiffs.". We insist that this, under the circumstances, constitutes a defense. Let it be premised, however, that the idea of this intrusion of water, now under consideration, should not be confounded with those instances, in the books, of mere influencing or superinducing causes of trespasses, such as conspiracies, instigations to violence, intoxicating liquors, &c., for in those cases the rule for fixing legal responsibility is different from that in the present case. The case at bar discloses not a mere influence—not a mere superinducing cause—but a tangible substance, belonging to the state, in the use of the state, set in motion by the state, which enters our close at the instance of the state, and carries away our rosin through lands of the state into the prison dam of the state. This water—this tangible substance—although it have " neither ears, nor eyes, nor understanding," possesses dimensions and capacity ; and when set in motion by the officers of the state, it has the " power" to transfer itself through twenty feet of highway belonging to the state, into our close—to drink up articles of pine gum therein—and then to return again, with its plunder, to the place whence it started. And it performs the act with the same practical effect as if it had " ears, eyes and understanding," and held the office of agent of the state prison at Auburn. Would it be adjudged that we were liable to the plaintiffs for these pretended damages, if the plea alleged that

Carhart *v.* Auburn Gas Light Company.

the agent of the state prison himself, or by human hands, entered our close, and carried therefrom our rosin to the creek, without our connivance, assistance or consent? Certainly not. Where, then, is the difference in principle between an act performed with human forces, and one performed by automatic forces, if each produces the same mischiefs, and occasions the same kind of damages to persons and property? We can perceive no difference; and therefore insist that there is none. This water, whilst it is upon the land of the state, is, to all legal intents and purposes, the automaton of the state, moving at the behests of the state, and charging the state with the consequences of its depredations. If it be said that the state of New York is vested with the sovereign or other valid right to dam up this water, and to fill and empty the prison reservoir at pleasure, we answer, that any privilege, in that respect, which the state may enjoy, does not charge the defendants with liability. If it be said that it is the duty of the defendants to interpose barriers against this water, we answer, that we do not occupy up to the bank of the creek, where alone a water tight wall could be erected. The state of New York, however, does own the bank of the stream, and can interpose such a barrier on its own land. If it be said that the defendants' manufactory is a noxious trade or occupation, we answer, that the allegation is untrue. The rosin used there is a clean and wholesome commodity. And it is as harmless as the maple syrup drunk by Brainard's cow, in the case reported in Cowen. (1 *Cowen*, 78.) The case of *Bush* v. *Brainard*, only decides that Bush was not liable for the value of the cow, which died of drinking his maple syrup, because the cow was in his sap-bush of her own wrong. Could the plaintiffs have recovered of Bush, had the cow, instead of drinking the syrup, caught up a pail of it with her horns, and deposited the same upon their wool or yarn? Certainly not. The court would have laid the damages upon the owner of the cow. The pleadings show that the plaintiffs went into possession of " Barber's Carpet Manufactory," 1 year and 9 months after the defendants established their gas light works. It will be admitted by counsel that this action is in the nature

of an action for a private nuisance, to recover damages for that which existed when they hired and went into possession of their premises. Viewed in the light of proceedings on account of a private nuisance, the plaintiffs are without a remedy as against the defendants. They are inhibited by the subsequency of their possession. The people are never estopped, because they exercise sovereign power. Individuals are estopped whenever they seek advantages from their own follies or wrongs, or unnecessarily expose themselves to injury from existing causes. A. erects on his own premises and uses a machine shop, from which issues smoke, cinders and disturbing sounds. The business is lawful and laudable. B. afterwards voluntarily hires or purchases the lot adjacent, and appropriates it to an object so incompatible with the business of the machine shop as to render the latter a nuisance to him. He exposed himself to the injury unnecessarily ; and the law denies him a remedy. In Ohio, it was held on trial of an indictment for establishing a noxious trade near certain dwellings, that it was competent for the defendant to *prove in bar of the prosecution,* that the dwellings were erected after the establishment of the alleged nuisance. (*Ellis* v. *State,* 7 *Blackf.* 534.) For this, as well as the reasons before assigned, the plaintiffs are *damnum absque injuria.*

II. It was not necessary, in the law, for the defendants to aver in their plea that the waters of the Owasco river would have been injured, corrupted or adulterated, as stated in the complaint, if the gas works of the defendants had not been located upon the premises stated in their said answer, and the manufacture of gas had not been carried on there. The second ground of demurrer to the defendants' plea is without legal force, unless the facts constituting the defense are, from their nature, insufficient, without such an averment. Here they are sufficient to bar the action without. If the plaintiffs are without a remedy against the defendants, for any or all the reasons assigned in this argument, it does not follow that such an averment would alter their liability. If they have a remedy against the defendants without such an averment, they would have it

Carhart *v.* Auburn Gas Light Company.

with it. And if the court determine that the state of New York, under the pleadings, is the party liable, an averment to the effect required by the demurrer would be worse than useless. It was necessary that the plea should state a defense. The pleader submits that it contains three defenses, either of which are sufficient to bar the action, viz: (1.) That the defendants were in the reasonable occupancy and use of their premises and materials, as was their right. (2.) That the damages sustained by the plaintiffs were caused, not by the defendants, but by the state of New York. (3.) That the plaintiffs are barred from prosecuting the defendants for a private nuisance, by the subsequency of their occupation. If these are defenses, or if all taken together constitute a defense, or if a defense can be stated without averring that the plaintiffs would have been injured, if the defendants had not established their works on these premises, the second ground of the plaintiffs' demurrer is invalid.

III. As the answer demurred to does not set up a counter-claim, it is not subject to demurrer, under sections 153 and 156 of the code. This point is made on the authority of decisions of judges at special term; and although the position has been overruled in this district, the defendants desire it to be noticed in the decision of this case. And let it be remembered, in the decision of the case, that the law of surface streams does not apply to percolating water nor subterranean water courses.

*By the Court,* E. DARWIN SMITH, J. The legal maxim, "*sic utere tuo ut alienum non lædas,*" which is but the gospel rule of morality, "of doing to others as we would that they should do to ourselves," lies at the basis of this action. The principle is a sound and beneficial one. The difficulty is with its application.

The principle implies what the law asserts, that equality is equity; that all men have equal rights before the law. Dominion over property, an equal right to its use and enjoyment, is common to all; and an action in respect to property will only lie where one unjustly invades another's right. Up to

this point the power of every citizen to use and control his own property is absolute and unqualified. The rule in respect to such use of property as our law allows, is well stated in *Radcliff's Ex'rs* v. *Mayor &c. of Brooklyn*, (4 *Comstock*, 202,) by Judge Bronson, as follows: "The law gives every man such title to his own land that he may use it for all the purposes to which such property is *usually applied*, without being answerable for consequences, provided he exercises proper care and skill to prevent any unnecessary injury to the adjoining land owners." In the case of *Hay* v. *The Cohoes Co.* (2 *Comstock*, 162,) Judge Gardiner states the rule substantially to the same effect. He says, "The defendants could not pollute the air upon the plaintiff's premises, (*Morley* v. *Pragnell*, *Cro. Car.* 510,) nor abstract any portion of the soil, (*Roll. Abr.* 568, *note*, 12 *Mass. R.* 221,) nor cast any thing upon the land, (*Lambert* v. *Berry, Sir T. Raym.* 421,) by any act of their agent, neglect or otherwise; for this would violate the right of domain. Subject to this qualification the defendants were at liberty to use their land in a *reasonable manner, according to their pleasure.* If the exercise of such a right, upon their part, operated to restrict the plaintiff in some particular mode of enjoying his property, they would not be liable. It would be *damnum absque injuria.*" But the rule, as stated also by Judge Bronson and Judge Gardiner, requires one other qualification, which is made by Judge Woodworth in the case of *Panton* v. *Holland*, (17 *John.* 96.) It is, aside from the question of negligence or unskillfulness, that "the act in question be not done maliciously." Judge Woodworth well says: "In the exercise of a lawful right a party may become liable to an action, when it appears that the act was done maliciously." (*Also see* 18 *Pick.* 115.) The exercise of the right of domain, which the law protects, and in respect to which it applies the rule of *damnum absque injuria* to any resulting injury to others, must be a legitimate use or appropriation of the property in a reasonable and proper manner, according as such property is usually applied, and without any negligence, unskillfulness or malice. If this action is sustainable, it must

Carhart *v.* Auburn Gas Light Company.

be upon principles which deprive the defendants of the benefit of this rule in respect to the rights of domain. The cases cited by the plaintiffs' counsel in support of this demurrer and for the support of the action, it seems to me, are not precisely applicable. They are cases between riparian owners interested in the common use and enjoyment of the water of a stream running through or adjacent to their respective lands. The difficulty in the application of these cases, cited by the plaintiffs' counsel, to the present case is, that the defendants, in the sense of these cases, is not a riparian proprietor on the Owasco river. In this case the defendants not only do not own the land upon the shore of the river, but do not make any use of the water of the river. The injury of which the plaintiffs complain is not caused by any direct agency of the defendants, by surface water cast upon or flowing from their land, or "from any neglect, design or intent on the part of the defendants to corrupt the waters of said river, to the injury of the plaintiffs," as stated in their answer.

The answer states, "that the ground where the works of the defendants are situated have been, ever since the defendants' occupied said premises, and yet is, very incompact and pervious, and has been during said period, and yet is, percolated by the water of the said Owasco river, against the wishes or the interests of the said defendants, and without their procurement or agency; and if any offensive substances have flowed from the defendants' works or lot, it has only been by reason of the percolation of the waters of the said Owasco river through the soil or grounds adjacent to the said river into the soil and grounds occupied by the defendants' gas light works, and the reflux or return of said water unto said river from the said grounds." The defendants are in the lawful occupation of their lot, pursuing a legitimate business, without doing any intentional injury to the plaintiffs, and yet from such occupation, and the prosecution of such business on said lot and premises, an injury does result to the plaintiffs. It is a case where the business of the plaintiffs and the business of the defendants, at their respective locations, and without fault on

either side, as now conducted, cannot go on together without loss and injury to the plaintiffs. The case, too, is unaffected by any question of grant, prescription or prior occupation on the part of the plaintiffs. If the action can be sustained, therefore, it must be upon the sole ground that the use of the premises of the defendants for a gas works is relatively unreasonable and injurious to the plaintiffs, to such an extent or degree as necessarily to create or become a *private nuisance. At this point* the rule above stated by Judges Bronson and Gardiner in respect to the private use of property terminates, and the principle of the maxim *sic utere tuo, &c.* applies. Blackstone defines a private nuisance to be any thing done to the hurt or annoyance of the lands, tenements or hereditaments of another. (3 *Black.* 215.) Blackstone says, also, " If one erects a smelting house for lead, so near the land of another, that the vapor and smoke kill his corn and grain, and damages his cattle therein, they are held to be a nuisance," (*Cro. Car.* 570;) and by consequence it follows, that if one does any other act in itself lawful, which yet being done in that place, necessarily tends to the damage of another's property, it is a nuisance, for it is incumbent on him to find another place to do that act, where it will be 'less offensive ; also, to corrupt or poison a water course by erecting a dye house or lime kiln, or in short, to do any act in the stream that in consequence " must necessarily tend to the prejudice of one's neighbor."

The act of the defendants in this case, in manufacturing gas upon the lot contiguous to the shore, " necessarily tends to the prejudice of the plaintiff," and is hence in conflict with the maxim *sic utere tuo, &c.* The answer admits this consequence, and claims exemption from damages and liability, on the ground that the water percolates through the soil without their fault, "intermixed or flooded with resinous, tarry or oily substances, as may have escaped from said works into the ground by accident, or in the ordinary course" of business. The counsel for the defendants insisted that the law applicable to the surface flow of water does not apply to water percolating in or through the soil, and cites *Beach* v. *Driscoll,* (20 *Conn. R.*

Carhart *v.* Auburn Gas Light Company.

542.) That was a case where one man had dug a reservoir on his lot, by excavating the ground four feet below the surface, into which the water came by percolation through the earth, and there stood in sufficient quantity for the use of his cattle. At a short distance he made another excavation or well, in which the water stood somewhat higher, from which, by a syphon, he brought the water to a cistern, from which he used it. The defendant did the same thing on his land adjoining, for the same purpose, which caused the water to fall in the plaintiff's reservoir, so that it did not supply the cistern; *held* that no action lay; and *Greenleaf* v. *Francis* (18 *Pick.* 117) was cited as a case like it. That was a case where the defendant dug a well on his own land, in consequence of which the water was diminished in the plaintiff's well. In both cases it was held that the law recognizes no title to water in the earth, separate from the soil. This is the extent of those cases. (*See also* 12 *Mees. & Welsby,* 324; 5 *Taunt.* 99.) The case of *Norton* v. *Scholefield,* (9 *Mees. & Welsby,* 665,) is the most analogous to the present case of any one I have seen. In that case the declaration stated that the plaintiff had a certain well and pump, and that the defendant was possessed of adjoining premises, and that he, intending to injure the plaintiff, erected a cess-pool so near the well and pump that the water was contaminated and rendered useless, by the oozing out of the soil and filth from the cess-pool. The case was disposed of upon a question of pleading, which assumed that the erection of the cess-pool was a nuisance. In *Tyler* v. *Wilkinson* (4 *Mason's R.* 400,) Judge Story defines the rights of riparian owners as follows: "*Prima facie* every proprietor upon each bank of a river is entitled to the land covered with water in front of his bank, to the middle or thread of the stream, or as it is commonly expressed, *usque filum aquæ.* In virtue of this ownership, he has the right to the use of the water flowing over it in its natural current, without diminution or abstraction, but strictly speaking he has no property in the water itself, but a simple use of it while it passes along. The consequence of this principle is, that no proprietor has a right to use the

water to the prejudice of another." If one proprietor may not make any use of the water to the prejudice of the proprietors below him, certainly a person with no rights in respect to the water, or rights inferior to those of a riparian proprietor, cannot be allowed to do so. In *Howell* v. *McCoy*, (3 *Rawle*, 250,) it is said that "a person has a right to so much of the water of a stream running across his land as is needful and proper for the supply of his tan yard and mill, and is bound to return the water so diverted, and not necessarily used and consumed in his business, without unnecessary waste or diminution, into the natural channel below, and that he is bound to return it *without polluting or poisoning it by admixture with unwholesome substances, to the injury of the owner below.*" This is upon the principle that every person entitled to the use of the water of a stream is entitled to receive it pure and uncontaminated. Like the air, it is common to all, and all who have occasion and a right to use it in any particular place, are entitled to receive it pure for use, as they have a right to require that the atmosphere they breathe shall be pure and free from artificial and noxious vapors. The maxim of the law is "*aqua currit et debet currere ut currere solebat;*" to which should be added—if it be unlawful to add to, or coin a new maxim in *latin*—the words, "*pure and uncorruptible.*"·

It can make no difference with the principle, by whom the waters are corrupted. No one has the right to do so in respect to the waters of fresh water streams, so essential as they are to the health and comfort of man and beast, so indispensable to life, and for domestic, agricultural and manufacturing purposes. Any person interested in the use and enjoyment of the water of a running stream must be entitled to maintain an action for any special injury he may sustain from the corruption of the water by any other person, directly or indirectly, whatever may be the cause, pretense or the occasion. This rule is essential to a proper regard for the public welfare and to the preservation of the public health, and to the due and complete enjoyment of private rights.

I think, also, that gas works are to be placed in the class of

Carhart *v.* Auburn Gas Light Company

erections which are not within the ordinary and usual purposes to which real estate is applied; and that whenever they create a special injury they are to be regarded as a private nuisance, for which an action will lie in respect to the special injury, like a swine stye, (9 *Rep.* 59,) a lime kiln, (2 *Black.* 141,) a dye house, (*Hutt.* 136,) a tallow chandler, a furnace, (*Cro. Car.* 570,) a brewhouse, (*R. Pal.* 139, *Hutt.* 136,) a smelting house, (1 *Roll.* 89,) a smith forge, (*Lut.* 70,) a livery stable, (*Coke* v. *Bergen,* 2 *Georgia R.* 425,) or a tannery, (17 *Barb.* 654.)

In this case the defendants could probably obviate all the damages complained of, by draining off the water of the Owasco creek from their lot. This I think they are bound to do, if they continue their works on their present lot. In the case of *Stonehewer* v. *Farrar,* (6 *Adol. & Ellis, N. S.,* 51 *Eng. Com. Law R.* 728,) which was an action for polluting water, it was held by one arbitrator, to whom the case was referred, that the defendants should take all *proper and reasonable precaution* to prevent the water from becoming unfit for the plaintiff's use, and should use a process of filtering mentioned in the answer, to purify it, before returning it to the stream. If proper precaution in this case were taken to keep the water from percolating into or through the soil of the defendants' lot, the injury complained of in this suit would be obviated. The defendants are bound to do this if they would continue the works where they are at present, within the maxim, *sic utere tuo ut alienum non lædas.*

The judgment of the special term should be affirmed.

[MONROE GENERAL TERM, September 1, 1856.  *T. R. Strong, Welles* and *Smith,* Justices.]