37   181
17ap209

JAMES H. HOOKER, RESPONDENT, v. THE CITY OF ROCHESTER, APPELLANT.

*Pollution of a private stream by city sewage — the city is liable for the damages occasioned to riparian owners.*

Chapter 476 of 1871 provided that, whenever the common council of the city of Rochester should deem it necessary, for the purpose of drainage, sewerage, or for the promotion of the public health, to extend the city sewerage or drainage beyond the limits of the city, and across private lands or highways, proceedings might be instituted under the drainage acts. Pursuant to this act a drain was constructed, extending beyond the limits of the city, which discharged its contents into a small private stream which ran through the plaintiff's lands. By reason of the foul and offensive matter discharged into the said drain, and from the drain into the said stream, the water of the latter became greatly polluted and unfit for household purposes.

*Held*, that the city was liable for the damages thereby occasioned to the plaintiff.

*It seems*, that if the stream had been navigable, and therefore a public one, like the Genesee river, a different question would have been presented, to the determination of which different principles of law would have been applicable. (Per BARKER, J.)

APPEAL from a judgment, entered upon a verdict in the plaintiff's favor for the sum of $600 damages. The questions presented were set forth in a bill of exceptions made by the defendant.

*J. N. Beckley*, for the appellant.

*J. & Q. Van Voorhis*, for the respondent.

BARKER, J.:

In 1871 the north boundary line of the City of Rochester was Bay street, which was intersected by North street, and from thence the latter street was continued into the country as a public highway. In that year proceedings were instituted, under the provisions of

chapter 476, of the Laws of 1871, for the purpose of constructing a sewer or open ditch from the city line, at the intersection of North and Bay streets, to connect with a small natural stream of water one mile north of the city limits. It was conceded upon the trial that these proceedings were conducted, in all respects, in conformity to the statute authorizing the same, and that in 1874 the work was completed.

In the act of 1871 it was provided whenever for the purpose of drainage, sewerage or to promote the public health the common council of said city shall deem and by resolution declare it necessary to extend such drainage or sewerage, to and beyond the limits of said city, and across private lands and highways in the adjoining towns, the mayor of the city may petition the County Court, as provided in chapter 888 of the Laws of 1869, and subsequent acts amendatory thereof. The provisions of the statute to which reference is made in the act of 1871 control the mode of procedure and were mainly applicable to these proceedings, except as to the mode and manner of levying the tax, for the purpose of securing money to pay the expenses of the improvement. In 1874 and 1875 the city constructed an outlet sewer from University avenue to the then north line of the city, so as to connect the same with the sewer before mentioned.

In 1874 the city limits were extended so as to embrace the sewer constructed by and under the proceedings mentioned. From the time of the completion of the sewer constructed by the city the contents of the same were discharged into the water-course before referred to, which passes over the farm of the plaintiff, located on this stream, outside of the city limits. The area drained by this system of sewers and discharged into the outlet sewer is some 600 acres, and the natural surface drainage of this tract of land before improvements were made thereon by the laying out and grading streets, by buildings and otherwise, was towards and into the said water-course. The filth of the outlet sewer discharged into the natural stream fouled the water so as to render it unfit for domestic use, and in consequence thereof the rental value of the plaintiff's farm was considerably diminished, and this action was brought to recover the damages sustained thereby.

The only question presented by this appeal is whether the city

of Rochester is liable to the plaintiff in damages, on account of the pollution of the water of the stream crossing his premises, by reason of the drainage from that part of the city lying north of University avenue.

No argument has been or can be presented which will justify the act of the city in discharging the contents of its sewers into this water-course, polluting the same to the damage of the plaintiff. This stream of water is so small that it belongs to the class designated as private water-courses, in which the general public have no interest, and the title to the bed of the stream and the use of the water belong wholly to the riparian owners. (*Buffalo Pipe Line Co.* v. *N. Y., L. E. and W. R. Co*, 10 Abb. N. C., 107.)

The acts of those who do not own land over which the stream passes, or those of the upper riparian owners, which causes the waters of the stream to be polluted, make them liable in damages to the lower riparian owners. All owners of lands over which streams of this class flow, have the absolute right to have the same kept free from any pollution which depreciates the value of their use for ordinary domestic purposes. The health, comfort and convenience of a farming community living upon or near such streams, depend very largely upon the purity of the same, and those who interfere with the natural purity of the water commit a grievous wrong and are amenable to the law for their misconduct. (*Carhart* v. *Auburn Gas-Light Co.*, 22 Barb., 297; *Thomas* v. *Brackney*, 17 id., 654; *Honsee* v. *Hammond*, 39 id., 89.) The act of the defendant violates the plaintiff's rights as directly and in the same sense as if the garbage and contents of the cess-pools of the city were conveyed by carts and dumped in his meadows bordering upon this stream. It is immaterial whether the contents of the sewer were discharged and deposited directly on the plaintiff's premises or at such a point that, by the law of gravitation, the same would flow into and down the stream.

In disposing of the appeal and upholding the plaintiff's judgment, we give no significance to the fact that the section of the sewer immediately connecting with the stream constructed by commissioners appointed under the act of 1871, is now within the city limits. We have not been cited to the act authorizing the extension of the city boundaries, and are not informed as to the

conditions, if any, imposed upon the city relative to keeping in repair and maintaining the public ditch or sewer previously constructed, and we cannot now say that the city, in its corporate capacity, has any jurisdiction over that improvement.

The laws which authorized the construction of the sewer, then outside of the city limits, gave to the same many of the features of a natural stream of water, as it was designed as a means of draining low, wet and marshy lands, with a view of preserving and promoting the public health, and when completed became the property of the State. (*Matter of Cyrus Swan*, 35 Hun, 625.)

If, however, after extending the city limits, this section of the sewer passed under the management and control of the city authorities, then the plaintiff's damages accrued by the wrongful act of the defendant as the sole proximate cause. A municipal corporation has no greater right than an individual to collect by a system of sewers the filth and drainage of a city and discharge it upon the lands of another, nor has it any immunity from a legal responsibility for the creating or maintaining of nuisances. (*Noonan* v. *The City of Albany*, 79 N. Y., 478.) In that case the action was to recover damages to the plaintiff's premises in the city of Albany, caused by water, dirt and filth thrown and deposited thereon from the outlet sewers of the city of Albany. The deposit was not directly upon the plaintiff's ground, but after its discharge it ran over other premises used as a dumping place for refuse, and passed down a declivity until it reached a valley or bed of a ravine and flowing from that point reached the premises of the plaintiff and flooded his lot. It was held that the plaintiff established a right of action. In its material facts, that case is in every essential particular like the case at bar. If it is necessary for the city to enjoy the privilege of using this watercourse to carry away from the city the sewerage which is collected into this outlet sewer, then it should condemn the stream to its use for that purpose and compensate the plaintiff, as owner, for the damages which he would sustain by such use. The jury were instructed that the city was responsible for the damages which had accrued to the plaintiff in consequence of the discharge into the stream of the sewerage which came from the sewer constructed by the city, from University avenue to Bay street, so far as that sewer turns into

the stream any substance which would not otherwise run there, and that the city was not responsible for the consequence arising from any pollution of the waters caused by the sewer constructed by the commissioners, as that was built and constructed under circumstances which did not make the city liable for it, and that it was only liable for what it collects in its own sewer and sends down upon the plaintiff's land. The gist of the plaintiff's cause of action was for damages which he suffered in consequence of turning foul substances upon his land and not for injuries arising by the increase in the flow of the volume of water.

The defendant's counsel insists that the learned court, in substance, charged the jury that the defendant would be liable if, by means of the sewers, mere surface drainage was carried into the stream and thereby increased the quantity of the flow, that then the defendant would be liable in damages, as distinct from the question of polluting the water, and took general exception to that part of the charge where it was said " that the city had no right to increase the natural flow of water."

The charge is not fairly susceptible of such a construction, and the plaintiff did not claim a right to recover on that ground, nor did the evidence point to a right of action in behalf of the plaintiff, except that which arose from the pollution of the stream, and rendering it unfit for domestic use. Sentences may, it is true, be extracted from the charge, which, if read apart from their connection, need qualification, but the proper qualification was given in the context, and the jury could not possibly have been mislead.

If this had been a navigable stream, and therefore public waters, like the Genesee river, then a very different question would be presented for our consideration, and different principles of law would be applicable in determining the plaintiffs' rights.

The judgment should be affirmed, with costs.

SMITH, P. J., BRADLEY and HAIGHT, JJ., concurred.

Judgment affirmed, with costs.