### STATE EX REL. v. MICHAEL F. BARRETT, DIRECTOR OF POLICE.

1. RULE AS TO EXERCISE OF POWERS BY BOARD.

    In the execution of a power delegated for purposes merely private, it is necessary that all to whom such power is delegated should concur in the act, but if persons be entrusted with powers of a general nature, or for public objects, if all are acting, a majority will conclude the minority, and their act is the act of the whole. Young v. Buckingham, 5 Ohio, 485, followed.

2. POWERS OF GENERAL AND PUBLIC NATURE.

    The powers and duties of the tribunal created by Sec. 1545-24, Rev. Stat., 92 O. L., 446, the federal plan law of Cleveland, consisting of the mayor, director of law and president of the city council, to hear and determine charges preferred against officers who have been removed by the head of the department to which they belonged, are of a general nature and for public objects.

3. RULES APPLIED TO TRIBUNAL UNDER SEC. 1545-24, REV. STAT.

    Under Sec. 1545-24, Rev. Stat., 92 O. L., 446, the federal plan law of Cleveland' which provides for the creation of a tribunal consisting of the mayor director of law and president of the city council to hear and determine charges preferred against officers who have been removed by the head of the department to which they belong, in which no provision is made as to a quorum, a finding and sentence by two members of the board, made upon consideration by the whole board, is a finding by the board and is valid.

4. CHARGE OF INFLUENCING VOTERS—SUFFICIENTLY SPECIFIC.

    A charge against an officer on the police force of Cleveland, that he "did use his influence as an officer" while at a certain voting booth "to induce divers persons to vote for" a candidate named and also did distribute money to certain persons for purpose of influencing them to vote for such candidate, all of which is contrary to a certain rule governing the police force of such city, although it might have been better to have made a general charge as to the violation of the rule mentioned and then, under a specification, set out the facts constituting the violation complained of, is sufficiently specific, to charge him with violating a rule, prohibiting police from interfering or making use of the influence of their office in elections, but permitting them to quietly exercise their right of suffrage as other citizens.

5. FINDING OF TRIBUNAL CONCLUSIVE.

    A finding by the tribunal created by Sec. 1545-24, Rev. Stat., 92 O. L., 446, the federal plan law of Cleveland, consisting of the mayor, director of law and president of the city council, that a police officer was guilty of using his influence in securing votes for a certain candidate at an election, is conclusive and the circuit court will not, in a mandamus proceeding seeking to reinstate such officer, go into the evidence as to what the real fact is as to the conduct of the officer, nor into facts as to what was done before such tribunal.

*Dawley* and *Meals*, for relator.

*Hogsett, Beacom, Excell, Gage & Carey*, for respondent.

APPEAL.

MARVIN, J.

The relator was a member of the police force of the city of Cleveland. The respondent is the director of police of said city.

On May 2, 1899, the relator was charged by the defendant, in writing, in the following words :

"That the said Detective C. O. Klaue did use his influence as an officer, and while at voting booth, precinct A, second ward, to induce divers persons to vote for R. E. McKisson for mayor, also that he did distribute money to one Frank Harborgrass and James Cunningham for the purpose of influencing them to vote for R. E. McKisson's re-election, all of which is contrary to rule 28, book of rules and regulations governing the police force of the city of Cleveland, Ohio."

Sometime in the said month, said charge was referred to a tribunal provided by law, consisting of John H. Farley, mayor of the city of Cleveland, Thomas H. Hogsett, director of law of said city, and George H. Billman, president of the council of said city. Later in the same month, said charge came on for hearing before said tribunal and, having been partly heard, was continued from day to day; witnesses were examined from time to time before said tribunal; and, in August of 1899, said relator was, by a majority of said tribunal, to-wit, the mayor and the director of law, found guilty under said charge; and, thereafter, on September 19, 1899, the following notice was served upon the relator:

"September 19, 1899.

"LIEUT. CHARLES O. KLAUE, Central Police Station :

"SIR :

"In the matter of the charges preferred against you—the majority of the members of the tribunal found you guilty as charged in the fourth specification of said charge, in that you did use your influence as a police officer and while at the voting booth, precinct A, in the second ward, you induced divers persons to vote for one R. E. McKisson, then a candidate for mayor, and that you did interfere at said election and while on duty with divers voters of the city of Cleveland, contrary to the letter and spirit of rule 28.

"You are therefore notified that you are discharged from the Cleveland police force.

"By order of

"M. F. BARRETT,　　　　　　　　　　　　JOHN VANEK,

"Director of Police.　　　　　　　　　　Secretary."

Since the date of said communication the relator has been deprived of his office upon the police force, and he seeks by mandamus, to be restored to the position which he occupied before he was discharged as already set out.

Rule 28 of the police force, referred to in the charge, reads :

"No one will be appointed on the police force for his religious or political opinions, and members of the force will avoid all religious or political discussions in the station house or elsewhere. They shall not interfere or make use of the influence of their office in elections, but may quietly exercise the right of suffrage as other citizens."

State v. Barrett.

On the hearing of this case, State ex rel. McKenzie v. Hyman, *ante* 000, we held that we could not inquire into the facts upon which the relator was tried, nor into the proceedings before the tribunal by which he was tried.

There remain, however, two questions to be determined:

First. Was the finding of the relator guilty by two members only of the tribunal such a finding by the tribunal as would authorize the punishment?

Second. Was the charge one of which the tribunal could take cognizance?

It is urged on the part of the relator, that, where a tribunal is fixed by law, to consist of a certain number of members, and no provision is made that any number less than the entire tribunal may act upon the matter submitted, or may determine the matter, that except *all* take part in the hearing, and all unite, or at least take part in the finding and sentence, such finding and sentence are invalid.

Attention is called to the fact that, under the statutes, in most cases where tribunals, consisting of a fixed number of persons, are established, it is specially provided what number shall constitute a quorum, and that the majority of such tribunal may act for the entire tribunal, and that no such provision is made in the statute under which the tribunal which tried the relator was organized.

This tribunal is provided for in Sec. 1545-24, Rev. Stat., 92 O. L., 446, and the part of such section, to which attention is called, reads:

"A public hearing, if demanded by the accused, before a tribunal composed of the mayor, who shall be chairman thereof, the director of law and the president of the city council."

No provision is anywhere made as to what number of this tribunal shall concur in its finding.

In Young v. Buckingham, 5 Ohio, 485, this language is used in the head note:

"Commissioners appointed to appraise lands to be condemned for public uses, the concurrence of a majority binds the minority."

A question under consideration in the case, was as to the valuation of lands taken for the use of the public. This was under the constitution of 1802, which did not require, as our present constitution does, the trial by jury to determine the compensation to be paid for such lands; and the statute then in force required that lands so taken, should be valued by three free-holders.

The court, on page 490, use this language: "The proceedings of the court show the valuation made and the amount tendered, but that although all the appraisers were present and acting, that two only united in the appraisement. It is objected that the dissent of one invalidates the appraisal, for it is insisted that a strict execution of powers must be shown. * * * The determination of this point depends upon the nature of the powers to be executed by the commissioners. In the execution of a power delegated for purposes merely private, it is necessary that all should concur in the act; as in cases of trustees, arbitrators, etc. But if the persons be entrusted with powers in some respects of a general nature, or for public objects, if all are acting, a majority will conclude the minority, and their act is the act of the whole. * * * It is evident that this power was confided to these commissioners for public objects, since the taking the land from McIntyre can be justified upon no other ground than that it was demanded by public interest."

In the case now under consideration, *all* the members of the tribunal acted, but, so far as appears, but two united in the finding and sentence of the relator.

It can hardly be doubted that the powers and duties of this tribunal are of a general nature and for public objects, and that if the language used by Judge Lane in the case just quoted from is the law, then the concurrence of the two members who signed the finding of the tribunal was sufficient.

In Brophy v. Landman, 28 Ohio St., 542, the court had under consideration a report recommending a certain street improvement in the city of Toledo. The law required that the board upon whose recommendation the improvement might be made, should consist of three commissioners to be elected by the city, who, together with the mayor and the civil engineer, should constitute the board of city improvements. When the matter of passing upon whether this improvement should be made, was taken up, there were present only the mayor, engineer and one commissioner, being three out of five members of the board. Upon a vote being taken as to whether the improvement should be made, the mayor and the engineer voted for it and the single commissioner who was present voted against it; and the court held that this did not constitute a recommendation of the board.

It will be noticed that, in this case, only a majority of the entire board met, to-wit, three out of five, and only a majority of this majority voted in favor of the improvement; so that, only a minority of the entire board voted for the improvement.

The court does not determine in this case, whether, if *all* those present had voted for the improvement, it would have been sufficient, but, on page 545, this language is used:

" If the three elements of the board of improvements convened, the mayor and civil engineer and board of commissioners, it may be that a majority of those three elements can act in making the necessary recommendation, but these conditions are not satisfied, when only one of a board of three convene."

And, again, on page 546, the court say:

" We do not now decide that it is impossible for three of this board " (of five persons) " to transact its business. But whatever number is present at a meeting, in order to make a valid recommendation in the matter of public improvement, it is necessary that there should be at least three votes in its favor."

In the case of Britt v. Lewis, Auditor, 9 Circ. Dec., 166 (16R. 343), it was held that: " Where an authority had been delegated to a board or committee, permanent and continuous in its nature and organization, the authority thus delegated to such board or committee may be exercised and performed by a majority of the whole number, if all have been notified to attend the meeting. And if a majority do attend, their act will bind the whole body; and that where one member of the board of equalization of Cincinnati was absent for two weeks, by leave of the board after its organization for the year, and while it was holding regular meetings daily, the remaining members may meet and continue the work of the board, and their action will be the legal action of the board. "

On page 167 of the opinion, in the case last cited there is a clear mistake, for Judge Douglass was made to say, " In Young v. Buckingham, 5 Ohio St., 485, commissioners were appointed to perform a single

State v. Barrett.

act, namely, to appraise property, and it was held that two could not bind all."

The mistake is apparent, because the case referred to is reported in 5. Ohio, not in the 5 Ohio St., and is the case quoted from in this opinion, and the holding was that the acts of the two commissioners did bind all.

In Martin v. Lemon, 26 Conn., 192, this language is used in the syllabus:

" An act of a public nature, which is to be performed by a committee, may, where merely ministerial, be performed by the members of the committee acting separately, and by a majority of the members.

" And it is holden in this state, in a certain class of cases, that an act requiring the exercise of judgment may be performed.

" But, as a general rule, where the act requires the exercise of judgment the members of the committee must convene, or be notified to convene, and confer on the subject, and a majority thus convened will constitute a quorum and may perform the act; and according to some modern authorities, a majority of the quorum has the same power."

In People v. Bachelor, 22 Barb., 310, this language is used:

" In case of a delegation of a public authority to three or more persons, the authority conferred may be exercised and performed by a majority of the whole number.  If the act to be done by virtue of such public authority requires the exercise of discretion and judgment, i. e., if it is judicial, the persons to whom the authority is delegated must meet and confer together, and be present when the act is performed; or at least a majority must meet, confer, and be present after all have been notified to attend."

We are of opinion that the finding of the two members of this board whose names are attached to such finding, is, in law, a finding of the board.

Upon the other question it is urged, on the part of the relator, that the charge made against the relator is not sufficiently specific, and that the finding does not show that the relator was found guilty of any specific thing charged against him.

It is, without doubt, true that there must be such specification contained in the general charge, or separately stated, as constitute the facts upon which the general charge is based, as will notify the accused person of the thing which he is to meet at the trial.

Perhaps, the better way in this case would have been to have made the general charge " Violation of rule No. 28," and then, under a specification, have set out the facts which, it was claimed, constituted such violation.  And yet there were distinct things alleged against the relator in this charge.

It is said that the language, " C. O. Klaue did use his influence as an officer and while at voting booth precinct A, second ward, to induce divers persons to vote for R. E. McKisson for mayor."

Whether this is well taken or not, the further language of the charge is that he " did distribute money to one Frank Harborgrass and James Cuningham for the purpose of influencing them to vote for R. E. McKisson's re-election."

Now the language of the rule is, " they shall not interfere * * * in elections, but may quietly exercise the right of suffrage as other citizens."  In the quotation just made, the words, " or make use of the

influence of their office," are omitted, but they are omitted to show that the interference prohibited is not necessarily an official interference.

The rule undertakes to do two things: First—To prevent the person holding the office, from interfering in elections, not necessarily interfering in his official capacity, but he is prohibited from interfering at all as is clearly manifest by the last clause of the rule, which reads: "but may quietly exercise the right of suffrage as other citizens."

He was charged with distributing money to voters to induce them to vote for a given candidate. Surely, this was interfering in an election, and was something beyond that which he was permitted to do, to-wit, " exercise the right of suffrage as other citizens."

Of course, he could not officially distribute money to voters. Such conduct would be entirely outside of any official duty which could be performed by a policeman; and we think there was a distinct specification of something done by the relator in violation of the rule. .

The finding is, that he did violate the rule, in using his influence as an officer, and that he interfered in the election.

We must suppose that he was found to have interfered in the manner charged against him ; and that being true, we can not say that the tribunal exceeded its powers in hearing and determining the charge made against the officer.

The length of time which elapsed between the dismissal of the relator from the police force, and the time when this action was brought, a period of about fourteen months, is one which we cannot overlook, but we do not hold that, in a clear case, such lapse of time would be held as a bar to the proceeding in the manner here sought.

Holding as we do, that we cannot go into the evidence of what the *real* fact is as to the conduct of the officer, nor into the facts as to what was done before the tribunal by which he was tried, the conclusion reached is that the petition must be dismissed at the costs of the relator.