BUTLER and Others *v.* THE STATE.

May Term,
1855.

BUTLER
v.
THE STATE.
6 165
140 202

6 165
162 253

Indictment against the persons composing the trustees of the *Wabash and Erie Canal,* for a nuisance in erecting a feeder-dam, &c., which was part of said canal. The dam was erected under the act of 1846 to provide for the funded debt of the state, and for the completion of said canal to *Evansville.* No act of wantonness was shown in the erection of the dam. *Held,* that the indictment was not sustained.

The state has exclusive jurisdiction over streams within her territorial limits, which can be navigated only for short distances, at brief periods, by inferior craft, and may obstruct them at pleasure for the public good.

The act of *March* 4, 1853, (Acts 1853, p. 17,) clearly manifests the state's intention to remit the punishment for the act on which the indictment in this case is founded; and in a case so anomalous as this, it is not perceived that any principle would be violated by giving it full effect.

APPEAL from the *Greene* Circuit Court.

*Tuesday,*
*May 29.*

STUART, J.—Indictment for a nuisance in erecting a feeder-dam, &c. The dam erected was part of the *Wabash and Erie Canal,* and the persons here indicted are the trustees, &c., of that work. Trial by the Court, on an agreed state of facts. Finding and judgment for the state. The evidence agreed upon is all in the record.

The trustees claim the right of erecting the dam, under the authority of a law of the state, entitled " an act to provide for the funded debt of the state of *Indiana,* and for the completion of the *Wabash and Erie Canal* to *Evansville.*" Gen. Laws, 1846, p. 1.

The 23d section of that act provides, that " said trustees shall have the right to locate and construct such feeders, feeder-dams, side-cuts, and reservoirs as may be necessary to supply said canal with water, and may take such timber, stone, or other materials as may be necessary for the construction of said canal, by making to the proper owners reasonable compensation therefor, on the same terms and in the same manner as the superintendent of said canal is now authorized by law to do; and the word ' canal,' wherever used in this act, shall be construed to mean and include all its feeders, feeder-dams, side-cuts and reservoirs."

The agreed state of facts discloses no act of wantonness in the erection. It states that there is a lock in the dam, of

May Term,
1855.

BUTLER
v.
THE STATE.

sufficient capacity to admit the passage of vessels of one hundred and five feet long and twenty feet wide, &c.; that the dam was erected by the trustees under the act of 1846, &c., and that it was part of the *Wabash and Erie Canal,* &c.

The act referred to partakes of the nature both of a law and a contract. It could not have been contemplated by the trustees and the state, regarded as contracting parties, that the completion of the "canal," as defined in the foregoing section, might subject them to a criminal prosecution.

But the state has even more than one side of the contract. By the act of 1846, the state is not only a contracting party, but one of the three trustees is an officer of her own selection. As to that trust, he is there, out of abundant caution in the legislative contract, to represent and sustain the interests of the state. She is thus, in some measure, a component part of both sides of this anomalous proceeding. Thus, in the case before us, the state further appears by her attorney prosecuting. And the prosecution is for the very acts of construction which she had authorized to be done—bound the trustees to do; and so far as representation by one of the trustees could go, actually participated in doing.

The prosecution of such acts, under such circumstances, can not be sustained. The position is not be thought of as a construction of the statutes, civil and criminal, bearing on the subject. It could be neither explained nor justified, consistently with good faith on the part of the state. Its very complexity would give it the appearance of covert repudiation.

Without pretending to say what this anomalous legislative contract, in many of its provisions, does mean, it is not difficult to discover what it does not mean, as applicable to the question before us. Beyond that we will let it be its own interpreter. Its design is matter of public history. And we are clear, alike from the wording of the act itself, from the position of the contracting parties, and from the well-known end to be accomplished, that it was never the

design of the state to subject the trustees to indictment for the simple discharge of a public duty authorized by statute.

The dam in question may be a great annoyance to some portion of the people of *Greene* county. No doubt it is to some of them a nuisance. But so is the whole canal a nuisance, in the same sense, though perhaps not in the same degree, to some portion of the people in every county through which it is located. Like every artificial pond of fresh water, it must affect more or less injuriously the health of the vicinage throughout its whole length, and obstruct passage to and fro from either side. The argument which would sustain an indictment for the erection of this dam in *Greene* county, would establish a principle of too extensive application. The right of the state to authorize the erection can not be questioned. Over streams within her territorial limits, which can be navigated only for short distances, at brief periods, by inferior craft, the state has exclusive jurisdiction, to obstruct at pleasure for the public good, and no action will lie for such obstruction. *De Pew* v. *The Board of Trustees, &c.*, 5 Ind. R. 8. The injuries complained of are a necessary result, inseparable from the blessings conferred on the public by means of such a public thoroughfare as the canal. It is proper that such temporary and imperfect modes of conveyance as most of our streams afforded, should be superseded, and others more adapted to the growth and improvement of the state should take their place. In time, no doubt, the canal itself will be supplanted by some other mode of conveyance and passage, commending itself to the public by greater capacity and greater speed. " In a country like ours," says *Taney*, C. J., " free, active, and enterprising, continually advancing in numbers and wealth, new channels of communication are daily found necessary, and essential to the comfort and prosperity of the people." *Charles River Bridge* v. *Warren Bridge*, 11 Peters 420. It is not, therefore, consistent with the public policy of the state that such erections as that complained of should be called in question in this mode. When the injury is direct and immediate, such as the taking of timber, stone,

&c., the twenty-third section above quoted makes provision for a reasonable compensation to the owners.

It is not necessary to intimate an opinion how far, and for what acts in connection with the trust, as, for example, for a wanton execution of the work not called for by the exigencies of the case, an indictment might not be the proper remedy. But the gist of such a prosecution, if it would lie, would not be the construction of the dam, feeders, &c., essential to the canal. That the contract of 1846 has fully authorized. It would be the wanton acts of the agents who transcended the authority conferred by the state, which, alone, could subject them to prosecution. Even then, perhaps, such prosecution would not lie; for if the twenty-sixth section can be construed into a statutory remedy, that alone could be pursued. The twenty-sixth section reads thus: " The state may at any time file her bill in chancery, in the *Marion* or any other Circuit Court in this state, against said trustees, to enjoin them from any violation of said trust, and also to compel them to execute the same."

The rule is this: When a new right is introduced, and a remedy for its violation is prescribed by statute, the party complaining of such violation is confined to the statutory remedy. *Lang* v. *Scott*, 1 Blackf. 405.—*Almy* v. *Harris*, 5 J. R. 175.

We do not undertake to say how far this doctrine is applicable to the present case, for it is not a question before us. But if it be applicable, it is clear this indictment will not lie. If it be not applicable, neither will it lie for simply erecting the dam, for there are no such wanton acts complained of as the other hypothesis contemplates.

Of the act of *March* 4, 1853, (Laws 1853, p. 17,) it is perhaps sufficient to say, that it clearly manifests the intention of the state to remit the punishment, even if she had, as we think she had not, any right to inflict it. The power, as well as the policy of such legislation, might present very different questions. But they are not raised. To the expressed intention of the state, in a case so anomalous as this, it is not perceived that any principle will

be violated by giving it full effect. It might perhaps be regarded as equivalent to the repeal of a statute imposing a penalty. *The State* v. *Youmans*, 5 Ind. R. 280.—*The State* v. *The Baltimore and Ohio Railroad Co.*, 3 How. 534, and the authorities there cited.

But we are clear, independent of this enactment, that the indictment cannot be sustained; and, therefore, do not lay much stress upon that act.

GOOKINS, J., having been concerned as counsel, was absent.

*Per Curiam.*—The judgment is reversed. Cause remanded, &c.

*W. D. Griswold*, for the appellants.

*G. G. Dunn, N. B. Taylor* and *J. Coburn*, for the state.