GUY STOUGHTON, Plaintiff in Error,

*vs.*

THE STATE OF WISCONSIN, Defendant in Error.

ERROR TO THE CIRCUIT COURT OF WAUKESHA COUNTY.

The territorial legislature of Wisconsin had power to authorize the erection of dams across the rivers of the territory, under such restrictions as it might deem essential to protect the public from injury.

Where a dam has been built across a river at a certain specified place, and of a certain height, under express authority of an act of the legislature, the person building or maintaining it is not liable *to an indictment* for a *public nuisance* created by such dam. SMITH, J., *dissenting*.

The state cannot punish one of its citizens criminally for doing an act which it has itself commanded or authorized.

There is a distinction between a case of a nuisance created by the erection of a dam under the act known as the mill dam act, and under a special act of the legislature, designating the place where and the height to which such dam may be built.

THIS was an indictment for nuisance in keeping up and maintaining a mill dam in the county of Rock, in which it is charged that, by means of said dam, the waters of Rock River were set back and caused to flow upon the lands around Koshkonong Lake, in the county of Jefferson, causing sickness and overflowing highways.

The indictment was found in the county of Jefferson, and was tried, upon change of venue, in Waukesha county. It charges that the defendant, "on the 10th of September, 1855, and on divers other days before and since, doth unlawfully keep and maintain, upon a part of section 21, in town 4, north of range 12 east, in Rock county, Wisconsin, and across a certain stream known as Rock river, flowing through said county of Jefferson, and thence into said county of Rock, a certain mill dam, by means of which the water flowing in said river was, and still is, obstructed, stopped and dammed up and set back, and flowed up said stream, and up and into a certain shallow lake, commonly

called Koshkonoug, in said county of Jefferson, and over the banks of said river and lake, in said county of Jefferson, and over the surface of a large tract and tracts of land in said county and adjoining said lake and river, and over and upon certain highways and common roads, to wit, &c., so that said highways and roads were and are overflowed and soaked, and made wet, and soft, and muddy, and marshy, and greatly hurt, damaged and impaired, so that the good people of said state, through the said highways and roads, with their horses, coaches, carts and carriages, then, &c., could not, nor yet can, go, return, pass, re-pass, ride and labor, as they ought and were wont to do; and the wood, leaves, brush, and other vegetable matter and animal substances, brought down the channel of said river by the natural flow of the water thereof, were, and still are, lodged in the channels of said river, the bed of said lake, and along the banks of said river and lake, and were and are very offensive and nau-seous; and the waters in said county of Jefferson became and were, and still are, stagnant and corrupt, and the lands over-flowed and became wet and marshy, and filled and covered with noxious weeds and decayed and putrid vegetable and animal substances; by means whereof divers noisome, unwholesome and deleterious smells and stenches, and unwholesome and in-fectious damps and fogs did, and still do, arise, so that the air along and adjacent to said stream, and lake, and public high-ways, and common roads, and dwelling-houses, in Jefferson county, became and was, and still is, corrupted and infected, to the great injury of the health, and the great damage and common nuisance of all the citizens of the state residing in the neighborhood, and passing thereby and along said high-ways," &c.

To this indictment the defendant pleaded not guilty.

Upon the trial of the cause in the court below, the defendant offered and introduced in evidence a patent from the United States to E. Childs for that part of territorial section 21, town 4, north of range 12 east, lying west of Rock River, dated August 10, 1837.

Also a deed from Ebenezer Childs to Luke Stoughton for .

some land described in patent dated February 22, 1835, duly executed.

Also a certified transcript of a deed from Luke Stoughton to defendant for a part of the same land bordering on the river, dated August 23d, 1843.

Also patent from the United States to Clowden Stoughton for lot 1, and the east half of the northwest quarter of section 21, in the same township and range, dated March 3d, 1847.

Also a deed from Clowden Stoughton, to defendant, for east half of northwest quarter of section 21, and a portion of lot one, described in the patent, dated 13th April, 1844.

It was here admitted by the prosecution, that the dam was situated upon the land described in the indictment, and that the title is in defendant, and was derived, that on the east side of the river, from Clowden Stoughton, and that on the west side of the river, from Luke Stoughton.

The defendant's counsel then read in evidence, sections 1, 2, 3 and 4 of the laws of the territory of Wisconsin, of the session of 1843, pages 34 and 35, entitled " An act to authorize Clowden Stoughton and Luke Stoughton to build and maintain a dam across Rock River ; and also to authorize Anson W. Pope and Virgil Pope to build and maintain a dam across said stream."

Also the amendment to said act, being chapter 333 of the laws of the state of Wisconsin, of the year 1851.

Upon the evidence being closed, the defendant, by his counsel, asked the court to instruct the jury, among other things, as follows :

" 1. It being a conceded fact, that the defendant is the owner of the land upon which the dam mentioned in the indictment is abutted, and that he obtained the title thereto, on the west side of the river, from Luke Stoughton, and on the east side of the river, from Clowden Stoughton, the defendant has, in law, the right to maintain said dam to the height mentioned in the act of the legislature, entitled, ' An act to authorize Clowden Stoughton and Luke Stoughton, to build and maintain a dam across Rock River; and also to authorize Anson W. Pope and Virgil Pope to build and maintain a dam across said stream ;' and of the act

amendatory thereof; and which acts have been read to you in evidence.

" The defendant is, therefore, on this indictment, entitled to an acquittal.·

" That if the jury find from the evidence, that the dam in question was erected and maintained, under and in pursuance of an act of the territorial legislature of Wisconsin, and of amendments to said act, authorizing the erection of said dam, that then they must find for the defendant."

This instruction the court refused to give. To which opinion of the court the defendant excepted.

The jury found a verdict of guilty, and the court below entered a judgment for the abatement of the nuisance, and fined the defendant fifty dollars and costs, and ordered that he stand committed until said fine and costs should be paid.

*J. E. Holmes* and *J. H. Knowlton*, for plaintiff in error.

1. By the enactment of the territorial legislature, the defendant was, as the assignee of Luke and Clowden Stoughton, authorized to maintain the dam in question, to even a greater height than he did. Being, by statute, empowered to do as he did, he is not a wrongdoer, as far as the public are concerned. *Mason vs. The Kennebeck and Portland Railroad Company*, 31 *Maine*, 215; *S. C.*, 1 *Am. Railway Cas.* 162, *and cases cited in note;* 1 *id.* 206 *and* 337; 24 *Maine*, 232; 3 *id.* 319; 38 *id.* 26; *Sess. Laws*, 1851, *p.* 362; *Sess. Laws*, 1843, *p.* 34; *People vs. Albany*, 11 *Wend.* 544; *Brown vs. New York*, 3 *Barb. S. C.* 254.

2. The judgment of the Circuit Court is erroneous, in adjudging that the whole dam be removed. If any *part* should, under this indictment, be removed, it should be so much only as created the alleged nuisance. 3 *Hill*, 61.

*L. B. Caswell*, district attorney, for the state.

1. The acts of the legislature were no justification. 1 *Russ. Cr.* 320; *Rex vs. Cross*, 2 *Car. & P.* (12 *E. C. Law R.*) 483, *per Abbott, C. J.;* 3 *Kent*, 432, *notes ;* 5 *Pick.* 492; 1 *Marshall, Ky.* 535.

These acts only authorize the defendant to obstruct or modify the navigation; not to erect a nuisance that would destroy the lives of individuals.

But the amendatory act expressly negatives the defendant's authority to flow land around Lake Koshkonong, or in other words, to create the nuisance charged in the indictment. *Vide Session Laws of* 1851, *ch.* 333, *section* 4; 25 *Wend.* 462.

If these acts were a justification, a vested right in the nuisance could never be disturbed, not even by the legislature itself, however deleterious to community the nuisance might be.

*By the Court,* WHITON, C. J. The plaintiff in error was indicted for keeping up and maintaining a dam across Rock River, which is alleged to be a nuisance. At the trial, a number of exceptions were taken to the ruling of the judge before whom the cause was tried, but we shall confine our remarks to one. It appears that the plaintiff in error contended at the trial, that he was authorized by an act of the legislature of the territory of Wisconsin, and by acts amendatory thereof, to keep up and maintain the dam in question; and introduced in evidence copies of the acts, and testimony to show a conveyance of the land on which the dam rested, from the persons named in the act, to himself. It appears further, from the bill of exceptions, that the counsel for the plaintiff in error asked the judge to instruct the jury, that if they found from the evidence, " that the dam in question was created and is maintained under and in pursuance of an act of the territorial legislature of Wisconsin, and of amendments to said act, authorizing the erection of said dam, that then they must find for the defendant."

This instruction the judge refused to give, and the defendant excepted.

We think this instruction should have been given. It is to be remembered that the act of the legislature authorized the erection of the dam under certain territorial limits, and that for the purposes of this decision, it must be understood that it was

erected within the limits designated. The question then is, whether, when the legislature, having competent authority so to do, authorizes a citizen to do an act, the state can prosecute the citizen criminally, for doing the act thus authorized. We have stated that the legislature had competent authority to authorize the erection of the dam. This appears to us to be clear beyond dispute, so far as the public or state is concerned. The legislative authority extended to all "rightful subjects of legislation;" and we cannot doubt that it extended so far as to allow of the erection of the dam in question. It is a very common exercise of legislative power to authorize such obstructions to be placed in rivers, the legislature taking care to annex such conditions as it may deem essential, to protect the public from injury. Our state constitution did not repeal any of the acts of the territorial legislature, except such as were repugnant to its provisions; and we see nothing in it which can be regarded as repugnant to the act in question.

It was contended by the counsel for the state that the authority which was granted by the legislature, was only an authority to obstruct the navigation of the river by means of the dam, and that the intention of that body in passing the act, could not have been to authorize such an erection as would cause sickness, and which would, on that account, be a nuisance. The answer to this suggestion is, that there is no condition of that kind expressed in the act; the authority to erect the dam in the manner and at the place designated, is express and absolute.

We are aware that the former Supreme Court held (*Luning vs. The State*, 1 *Chand. R.* 178) that under the mill dam act, by which a general power is given to all persons to erect mill dams on their own land, and flow the water upon lands owned by others, no authority was given to create a nuisance; and that an indictment could be maintained against any one who, under the authority conferred by the act, should erect a dam which should be adjudged to be a nuisance.

We are not disposed to question the correctness of that decision. But there is a wide difference between a general power to erect dams and flow the waters of rivers back upon the land

of other persons, and an authority to build a dam of a certain height in a particular manner and at a particular place. In the former grant of power, the legislature may well be understood to have withheld the power to erect a nuisance, because the height of the dam, the manner of its construction, and the place where it was to be built, were to be determined by the person who erected it; while in the latter, all those matters are determined by the legislature itself. We must hold that the legislature had in view all the consequences which were to follow from doing the act which they authorized, and that the state cannot now punish an act as a crime which it has said in plain words might be committed.

It is to be remembered that this is not the case of an individual seeking redress for a private injury, but an attempt by the state to punish, as a crime, an act which it has itself authorized. We are aware of the hardship of this case, and have come to the conclusion which we have announced, with some reluctance; but the principles which are involved are too important to be disregarded.

We cannot suppose that the state can punish one of its own citizens criminally, for doing an act which it has itself commanded or authorized him to perform. *See the case of the People vs. Albany*, 11 *Wen. R.* 539.

For the reasons above given, the judgment must be reversed.


SMITH J. I do not concur in the opinion of the majority of the court, that the act of the legislature which authorizes the defendant to erect and maintain his dam, precludes the state from prosecuting him by indictment, in case the dam becomes a public nuisance, or from abating the nuisance by that mode of procedure. It seems to me that the state never intended to disarm itself of that salutary power, essential alike to its own protection and the peace and welfare of the community. Nor am I able to conceive that the state, in conferring

that special privilege upon an individual, contemplated the withdrawal of its protection from the rest of its citizens.

It is intimated that the private citizen injuriously affected by the nuisance occasioned by the dam, may proceed to have the same abated by private action. But is this certain? Is not one of the essential characteristics of an action brought by a private individual for a nuisance, the fact that the nuisance is private in its nature, peculiarly affecting the plaintiff, and not the citizens generally? If it be common to all the people in its vicinity, must not the prosecution be public, in the name of the state? and if the nuisance is shown to be public, common to all the people, will not that fact established, defeat a private action? One reason given for this doctrine is, that to permit a private action to be brought for a public nuisance would open the door to a multitude of suits. Now if this dam is a nuisance at all, it is most certainly a public nuisance; and is there any feature of the case, or provision of statute, which would relieve the people affected by the nuisance, from the legal disability of maintaining a private action? If not, then what remedy remains? Does not the legislative license operate as a complete immunity, however deleterious or fatal the consequences may be?

However this may be, it seems to me that there is very little difference, in principle, whether the state proceeds directly in its own name to prosecute and abate the nuisance by indictment, or whether it lends its sovereign writ or mandate to a private citizen to that end; in short, whether the state proceeds to abate, by one public action, or lends its process and authority to the accomplishment of the same end by an indefinite or infinite number of private actions. If the legislative license is so efficacious as to ward off the sword of justice when wielded by the public arm, ought it not to withstand the puny tilts of private assailants? If the state has foregone the right and power to circumscribe the license within the limits of public nuisance, is it not equally prohibited from allowing its tribunals and process to be used by private individuals for that purpose?

But I cannot think that the legislative license has any such scope. Its effect is to render it lawful for an individual to build

a mill dam across a stream where it would be unlawful to build such dam without such license. If the stream were not declared navigable, it would be lawful to erect the dam without the legis-lative license, but he could not maintain it after it should become a public nuisance. Now, it seems to me, that the effect of the license in this respect, is no more than to place the dam and owner on the same footing as the owners of dams upon streams not navigable. Both are entitled to the use and enjoyment of the stream for that purpose, but neither can so use it as to become a public nuisance destructive of the health, lives and happiness of the community. I cannot perceive that the legislative license gives to the owner of the dam (in this respect), any greater privileges, rights or immunities than those enjoyed by such owners upon private streams on their own land. Such it seems to me is the fair and sound construction to be put upon these legislative licenses to build dams across navigable streams.

Entertaining these views, I am unable to concur in that portion of the opinion of the court which holds the contrary doctrine.

It is with great deference, and with reluctance, that I have expressed my dissent, and I would by no means express myself too confidently, for these views may be all wrong. But even if they are wrong, it has appeared to me better that they should have utterance; for if it be true that the effect of these legislative licenses is to render the state powerless to punish, abate or prevent public nuisances occasioned thereby, and to leave the community unprotected, it is quite time that the legislature should be advised of the extent of the privileges and immunities so granted, that they may make the necessary reservations hereafter.