The State of Wisconsin vs. The City of Eau Claire and others.

THE STATE OF WISCONSIN VS. THE CITY OF EAU CLAIRE and others.

MUNICIPAL CORPORATIONS: NAVIGABLE STREAMS: CONSTRUCTION OF STATUTES. *(1, 3)* For what purposes and within what limits cities may be empowered to dam navigable streams. *(2, 4)* Construction of statutes. INJUNCTION: PLEADING. *Injunction not granted on grounds not averred.*

1. Ch. 231 of 1876, amending ch. 333 of 1875, makes the power given the defendant city to construct a dam across the Eau Claire river dependent on the power to construct water-works, and limits the power to lease water-power created by such dam, to the excess not required for the water-works; and it is not, like the act amended (37 Wis., 400), void on the ground that the power so conferred is for either a public or private use at the option of the city.

2. This court cannot treat the amendment as *colorable only*, but will hold all statutes to have been framed and passed in good faith.

3. The legislature may authorize the erection of a dam in a navigable river, not materially obstructing navigation, for a public purpose other than the improvement of the navigation.

4. Where an act of the legislature authorizes the erection of a dam on a navigable river, with provision that it shall be so constructed as not substantially to obstruct navigation, the court will not assume that it is impossible to execute the power as granted, or restrain its execution upon the ground that the dam will obstruct navigation.

5. The erection of a dam cannot be enjoined on the ground that the act authorizing it does not provide compensation for lands which may be thereby overflowed, where it is not averred in the information that any lands will be overflowed.

INFORMATION for a Writ of Injunction.

The first clause of sec. 1, ch. 231 of 1876, declares that ch. 333 of 1875 "is hereby amended so as to read as follows," etc. The first four sections of the act as amended, are as follows:

"Sec. 1. The city of Eau Claire is hereby authorized and empowered to construct water-works for the purpose of supplying said city and the inhabitants thereof with water, and for that purpose is authorized to construct and maintain a dam not to exceed sixteen feet in height above low water mark,

across the Chippewa river, at such place within the limits of said city as the common council thereof may determine, and may open and construct drains, sewers, aqueducts, mains, and may construct or purchase water-wheels, pumps and machinery for elevating and forcing water through mains and pipes, and all other works and appendages necessary or proper to the successful construction and operation of water-works to supply said city and the inhabitants thereof with water, and to establish water-rates and provide for the collection thereof; and the common council of said city, in addition to the powers herein specifically granted to them, shall have power to pass and adopt all such ordinances, resolutions and orders as may be necessary or proper to construct, maintain, operate and regulate such water-works; and it shall be the duty of said city to complete said water-works within a reasonable time after such works shall have been begun, and, for the purpose of operating the same, to apply such portion of the water-power created by said dam as may be necessary for the successful and efficient operation thereof.

" Sec. 2. The common council of said city is hereby authorized and required to erect, construct and maintain in said river, above and below the dam authorized to be constructed in this act, such piers, booms, and other structures, as shall be sufficient for protecting and preserving the navigability of said river, so far as the same may be rendered necessary by reason of the construction and maintenance of the dam and works herein authorized to be constructed.

" Sec. 3. In case the dam hereby authorized to be erected across said river shall create any water-power, flowage, slack-water or accumulation of water not immediately or continuously needed to propel the machinery, and maintain and supply the mains connected with said water-works, or to protect or preserve the navigability of said river, the common council of said city is hereby authorized and empowered to let, lease and rent such surplus water-power, flowage, slack-water or ac-

cumulation of water, or any part or portion thereof, for manufacturing or other purposes, which may not be needed to operate and supply such water-works and protect and preserve the navigability of said river, and may also let, lease and rent any of the piers, booms or other structures which may be constructed or erected under the provisions of this act, for any use or purpose which shall not materially obstruct the navigability of said river, or interfere with the successful operation and maintenance of the dam and works herein authorized to be constructed; and may fix the rents for water-power, and the use of such flowage, slack-water or accumulation of water, and the rates of boomage or storage of saw-logs, timber, fence posts and railroad ties, not, however, exceeding " certain specified rates.

" Sec. 4. The dam authorized to be built by this act shall be constructed so as not to materially obstruct the navigation of said river, and shall contain a lock of sufficient capacity to safely and expeditiously pass steamboats and rafts of lumber two cribs wide and seven cribs long; said lock shall not be less than forty feet wide and two hundred and seventy feet long, and shall be maintained and operated free from all tolls and expense to the owners or those in charge of said steamboats and rafts; and there shall also be constructed and maintained in said dam, separate and sufficient chutes and slides for the safe and convenient passage of logs, timber, fence posts and railroad ties; and a chute may be constructed in said dam for the safe and expeditious passage of rafts of lumber."

The act further provides that the piers and booms thereby authorized shall be so constructed as not to materially obstruct the navigation of said river for lumber, saw-logs, etc., and shall be so constructed and operated that saw-logs, timber, etc., designed for points below the dam, can be expeditiously separated from those designed to be stored in the booms whose construction is authorized by the act (sec. 5); that the works shall be so constructed, maintained and operated, that there

shall be at all times a clear, unobstructed channel for all lumber, logs, timber, etc., designed for points below said dam (sec. 6); that the act shall not be construed as authorizing the common council of said city, or any lessee thereof, to charge any toll or compensation for passing boats or rafts through the locks, or for assorting or passing any saw-logs, timber, etc., by the booms or over the dam, except upon logs, timber, etc., stored in such booms at the request of the owners or claimants thereof (sec. 7); that said city shall be liable for all damages sustained by any one by reason of the insufficiency of any of the works authorized by the act, or by reason of unreasonable delays or detentions in operating them, or by reason of the negligence of the agents or employees of the city in operating them (sec. 8). It provides that the common council may issue bonds of said city, not exceeding $100,000 in amount, after the question of constructing such works and issuing such bonds shall have been determined affirmatively by the legal voters of such city at an election to be held for that purpose (sec. 9); that all moneys received from the lease of water-power, etc., etc., "and any other source arising from any of the works" authorized by the act, shall be applied to the keeping of the works, and payment of the interest and principal of said bonds; and that if the city shall not receive from such sources a sufficient sum to pay the interest upon such bonds, the common council shall levy a tax to meet the deficiency; and that all coupons upon such bonds, when due, shall be received for city taxes (sec. 10). And finally it declares that said ch. 333 of 1875, as thus amended, "is hereby reënacted, to take effect from and after the passage of this act."

After the publication of this act, an election was held in said city, pursuant to an ordinance passed by the common council for that purpose, at which a majority of the legal votes were in favor of the construction of said dam and the issuing of $100,000 in city bonds for that purpose; and the city was

about to enter upon the construction of the works authorized by the act, and to issue its bonds therefor in the sum of $100,000. Thereupon the attorney general, upon leave granted by this court, filed here an information for an injunction against said city, its mayor, aldermen and clerk, restraining them and their successors from entering upon the construction of said works or issuing said bonds.

The information, after stating the facts above set forth, alleges that the cost of constructing the works mentioned in the act, as therein provided, will be not less than $100,000, and their maintenance will be attended with very considerable annual expense; that their construction will interrupt and prevent the free use and enjoyment of the waters of said river for the purposes of navigation, and will cause great, irreparable and permanent public injury and mischief in that regard; that no assent to or authority for their construction had been given by the government of the United States; that many of the taxable inhabitants of said city, and many nonresident owners of property therein, are opposed to the adoption of said act, and the construction of such works, the issuing of said bonds, and the incurring of the indebtedness and liabilities contemplated by the act; that, by reason of these facts, and because said act purports to authorize said city to enter into engagements, incur indebtedness, and use the taxing power of the state for matters not of public or municipal concern, the act is wholly unconstitutional and void; and that the construction of said works and the issuing and putting into circulation of said bonds, unless restrained by the order of this court, will be the cause of great, lasting and irremediable public wrong and injury.

Upon this information, the attorney general moved for a temporary injunction.

*W. F. Bailey,* of counsel for the plaintiff, contended, 1. That the act of 1876, like that of 1875 (37 Wis., 433), does not purport to grant the powers therein defined upon the

ground of improving the navigation of the Chippewa river; that the dam here in question would necessarily constitute an obstruction to the navigation of that river; and that the legislature of this state has no power to authorize the placing of dams or other obstructions in navigable streams for any other purpose than the improvement of navigation therein, or the bridging thereof for the purposes of commerce and public travel. In support of this view he cited Ordinance of 1787, art. III; Const. of Wis., art. IX, sec. 2; Enabling Act of August 6, 1846; *Hogg v. Zanesville C. & M. Co.*, 5 Ohio, 410; *State of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 13 How., 518; *Green v. Biddle*, 8 Wheat., 1; *City of Georgetown v. Alexandria Canal Co.*, 12 Peters, 97; *Depew v. Trustees of the Wabash & Erie Canal*, 5 Ind., 8. As to the meaning of the phrase, "free navigation," he cited *Morgan v. King*, 35 N. Y., 459, and *Hickok v. Hine*, 23 Ohio St., 523. 2. That the city could not lawfully engage in such an enterprise, and issue its bonds to pay the expense thereof. The legislature cannot authorize a municipal corporation to create a debt or levy a tax in order to raise funds for a mere private purpose. *Brodhead v. Milwaukee*, 19 Wis., 652; *Attorney Gen. v. Eau Claire*, 37 id.; 438, 439; *Sharpless v. The Mayor*, 21 Pa. St., 147-168; Blackw. T. T. (4th ed.), 1, and cases there cited. Even where an act of the legislature is *colorably* legal, courts may and should look into and beyond them, to ascertain whether the real objects are not other than those primarily expressed. *Spaulding v. Lowell*, 23 Pick., 80; *Commonwealth v. Cambridge*, 7 Mass., 166; *Parks v. Boston*, 8 Pick., 218; *Freetown v. Bristol*, 9 id., 46; *Copeland v. Packard*, 16 id., 217. A candid reading of the bill convinces the mind that its object is to build up and maintain extensive water and booming privileges for the benefit of individuals and private corporations, but in the name of the city, and that the injury resulting to the large commerce and industry upon the Chippewa river will be far greater than the advantage accruing to

the small city of Eau Claire from the maintenance of water-works. The court will take cognizance of these facts and hold the act void. See the cases above cited. The power to construe statutes is in the courts alone (7 Johns., 494, 507–8), and to aid this court in construing the present act, they will consider the former act relating to the same subject. *Tonnele v. Hall*, 4 Coms., 145–6; *Harrington v. Smith*, 28 Wis., 43; 3 Mass., 17, 296, 418; 9 Cow., 507; 15 Johns., 380; 16 Vt., 230; 12 N. H., 284; 3 How. (U. S.), 516. It is evident from sec. 3 of the act, that the design is to create in the slack-water a vast reservoir for the storage of logs, to be rented by the city and under its control. The city is to regulate how much shall be charged for the storage of logs, for the use of the river, the booms, and the shores of the stream. The only properly public franchise here granted is that of the water-works. The others are strictly private, and such that, unconnected with the former, the city could not take them. It can take only what is necessary for the construction of the water-works. Although the construction of such works, when taken in connection with other rights or property not necessary to them, will create a valuable privilege, the city cannot take and use such property. As the flowage of land and the use of the bed of the stream will be all that is necessary for the water-works, the city cannot take the fee; nor can it condemn the riparian owner's land or rights, for the mere purpose of making a booming privilege, or give or lease to another a privilege to store logs on his possessions. The riparian owner would still retain all his former interest, subject to the right of flowage and that of using the water. The city could not buy such interest, as that would be an object foreign to the purposes of a municipal government. *Kane v. Mayor, etc.*, 15 Md., 240; *Springfield v. Railroad*, 4 Cush., 63; *Fall River I. W. Co. v. Railroad*, 5 Allen, 221; *Hickok v. Hine*, 23 Ohio St., 530, 531; *Giesy v. R. R. Co.*, 4 id., 308; 5 Ohio, 392; 16 id., 544; 17 id., 494; *Walker v. Shepardson*, 4 Wis.,

486.    3. That the act is void because there is no legal provision for condemning property and making compensation. *McArthur v. Kelly*, 5 Ohio, 143; Const. of Wis., art. XI, sec. 2; *Lumsden v. Milwaukee*, 8 Wis., 485.

*I. C. Sloan, contra:*

1. Erection of works for supplying a city with water is a public and municipal purpose; and the legislature may authorize a city to construct such works, to levy taxes and exercise the right of eminent domain for that purpose. *Grant v. Davenport*, 36 Iowa, 402; 2 Dillon on Mun. Corp., § 462, and authorities cited in note 5.    2. It is settled by a uniform current of authorities, that the legislature of a state (in the absence of any repugnant legislation by congress) may authorize dams or bridges to be erected across navigable rivers, which do not materially obstruct their navigation; and this, although such structures may cause some delay, risk and increased expense, and require increased care and skill in the navigation thereof.    And this rule applies to the states northwest of the Ohio river. *Williams v. Beardsley*, 2 Carter (Ind.), 591; *Hutchinson v. Thompson*, 9 Ohio, 65; *Spooner v. McConnell*, 1 McLean, 353; *Palmer v. Cuyahoga County*, 3 id., 226; *Jolly v. T. H. Draw-Bridge Co.*, 6 id., 237; *Illinois River Packet Co. v. Peoria Bridge Association*, 38 Ill., 467; *Woodman v. Kilbourn Manf. Co.*, 6 Law Reg., N. S., 238; *Willson v. Blackbird C. M. Co.*, 2 Pet., 245; *Passaic Bridges Case*, 3 Wall., 782; *Gilman v. Philadelphia*, id., 713; *Pennsylvania v. W. & B. Bridge Co.*, 18 How. (U. S.), 432; Cooley's Con. Lim., 591.

There was also an oral argument against the motion by *W. F. Vilas*, of which no brief is found upon the files.

RYAN, C. J.    We held in the former case, *Attorney General v. Eau Claire*, 37 Wis., 400, that the statute then before us, ch. 333 of 1875, authorized the erection of a dam at public cost across a navigable river, either for the purpose of water-

works for the city or for the purpose of leasing the water-power for private purposes; and that .so the power was alternative and optional, either, for a public or a private use, and therefore void.

Since that decision, and obviously in view of it, the legislature has amended the statute of 1875 by ch. 231 of 1876. And the amendment so clearly and emphatically makes the power to construct the dam dependent on the power to construct water-works, and limits the power to lease the water-power to the excess not required for the water-works, as to place the power beyond criticism in that respect.

This was not seriously questioned by the counsel who made the present motion. But it was argued that the amendment of the statute was colorable only, and that the main object in the statute of 1876 was the same as in the statute of 1875; the creation of water-power, not the construction of water-works. There is nothing in the language of the statute to warrant such a view, which would imply bad faith in the legislature. Such an implication we assuredly cannot countenance. As we said, in comment on a similar imputation, in the former case: "It would be a palpable violation of judicial duty and propriety to seek in a statute a construction in conflict with the constitution or with the object of its enactment; or to admit such a construction, when the statute is fairly susceptible of another in accord with the constitution and the legislative intention. And it would not only be unbecoming, it would be unwarrantable, as was well suggested by counsel, to impute insidious ambiguity, intent to violate the constitution *per ambages*, to a statute. We shall surely not look for *intentio cæca mala* in any statute. We shall hold all statutes framed and passed in good faith."

In the former case, speaking of the power granted to the city to construct water-works, we had occasion to say: "That is so essentially a public and municipal purpose, that it is obvious that the city can take any legitimate power in aid of

it. For that purpose, the legislature could unquestionably grant, and the city take, power to construct and maintain a dam, not obstructing the navigation of a public river, or violating other right public or private. And the dam so authorized might well produce an excess of power. *Superflua non nocent.* In such a case, as was frankly admitted on the argument, the surplus water need not run to waste. The legislature might well grant, and the city take, power to lease it. The power to construct and maintain the dam would still rest on the public, municipal use; not on the disposition of the accidental excess. *Spaulding v. Lowell*, 23 Pick., 71."

The statute appears to be framed with due regard to the navigation of the river; making careful provision against its obstruction. There is a general provision that the dam shall be so constructed as not substantially to obstruct navigation. And there are particular provisions for a lock sufficient for the safe and expeditious passage of steamboats and rafts, and for chutes and slides for the safe and convenient passage of logs, etc., and for other works sufficient for the protection and preservation of navigation.

There is no averment in the information that the dam or water-power authorized is disproportionate to the purpose; or that the city does not intend in good faith to construct the water-works; or that it has adopted a plan for the construction of the dam unauthorized by the statute, or in disregard of its provisions for the protection of navigation. The information avers only that the city is about to execute the power, and that the construction of the works authorized will interrupt and prevent the navigation of the river.

The averment is therefore directed, not against the execution of the power by the authorities of the city, but against the power itself as granted by the legislature. We did not understand counsel as seriously questioning the right of the legislature to authorize the erection of a dam, on a navigable river, not materially obstructing navigation, for a public pur-

pose other than the improvement of the navigation. *Stough-ton v. State,* 5 Wis., 291; *Newell v. Smith,* 15 id., 101; *Wood v. Hustis,* 17 id., 416; *Arimond v. Canal Co.,* 31 id., 316; *Pumpelly v. Green Bay Co.,* 13 Wall., 166. We therefore need not consider that question. And the question before us is, whether we shall arrest the execution of a work authorized by the legislature to be so constructed as not to obstruct navigation, upon the ground that the work so authorized will obstruct navigation. We could do so only upon the assumption that it is impossible to execute the power as the legislature granted it; that any dam, however constructed, would necessarily obstruct the navigation of the river. That we do not feel at liberty to assume, against the legislative grant. In the argument of the former case, it was urged on the one side that the dam authorized would materially obstruct navigation; on the other side, that it would materially improve it. The legislature was evidently of opinion that the dam could be erected so as at least not materially to obstruct navigation. It would not be fitting to hold, on a preliminary motion, in advance of all trial or even plan, that the legislature was wrong. And, in the absence of all complaint against the execution of the power, we cannot enjoin the power to erect a dam so constructed as not to obstruct navigation, upon the ground that it will obstruct it. If the dam constructed should prove a material obstruction to the navigation of the river, it will be an abuse, not an execution of the power. It will not be such a dam as the statute authorizes. For the purposes of this motion, we must consider the statute a valid grant of power. No abuse of the power is alleged; and we cannot enjoin its use.

It was objected to the statute, that it provides for no compensation for lands which may be overflowed by the dam. It is enough to say here that there is no averment in the information that any lands will be overflowed. The Chippewa, where the dam is authorized, is understood to be a peculiar river; and it is quite possible that there may be no overflow. We

certainly cannot take judicial cognizance of the fact, if fact it should prove to be.

We do not now consider whether we should hold the information good or bad on demurrer. We only hold that, in the present state of this cause, we do not feel at liberty to enjoin the execution of the legislative grant of power.

*By the Court.* — The motion is denied.