STATE *vs.* WALDO E. BARNES.

KENT—MAY 14, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

Under Pub. Stat. R. I. cap. 79, §§ 3, 4, 5, 6, 7, 14, the General Assembly delegated to town councils the power of locating the kinds of business therein enumerated.

When such business has been so located the owner thereof acquires rights in the location that cannot be taken from him without making compensation therefor, unless such use of the location be abated as a public nuisance.

That which is authorized by law cannot be held to be a public nuisance ; hence the business carried on at the place so designated therefor cannot be declared a public nuisance so long as the licensee keeps strictly within the terms of his license, and conducts the business in a reasonably careful and proper manner.

The State cannot punish one of its citizens for doing an act which it has authorized him to perform.

It is competent for the General Assembly to authorize an act which, but for such authorization, would constitute a public nuisance.

When one is authorized by law to engage in a particular business at a designated place, he is not liable to indictment for the consequences of the exercise of such authority, provided he keep strictly within the terms of his license, and act thereunder carefully and properly.

But such a licensee will be held to a strict observance of the limitations of his authority.

In the trial of an indictment charging the offence described in said sections, it is competent for the defendant to show the action of the town council relating to the location of his works.

If such a licensee conduct the business in a negligent and improper manner, and *thereby* create a public nuisance, he may be prosecuted and punished therefor, notwithstanding his license.

An indictment alleged the offence mentioned as having been committed on a day stated, and "on divers other days and times between said day and the day of finding this indictment":—

*Held,* that this stated a sufficient *continuando* to warrant an order of abatement in case the defendant be found guilty.

An order for the abatement of a nuisance is not a necessary part of a judgment thereon, and an indictment need not be laid with such a *continuando* as would be required to warrant the order in case of conviction.

INDICTMENT for maintaining a bone-boiling establishment and place for treating the waste and offal of animals, &c. Heard on defendant's petition for a new trial.

TILLINGHAST, J.    The indictment in this case charges, in substance, that on the first day of January, 1893, and on divers other days and times between that day and the day of the finding of the indictment, with force and arms, at Warwick, in the county of Kent, the defendant unlawfully and injuriously did cause and permit the dead bodies of divers large numbers of horses and other animals, and the flesh, blood, bones, entrails, and other filth of and from said dead bodies, to lie and remain near to the dwelling-houses of divers persons then and there occupying the said houses, and also near to a certain public road and highway there, for a long space of time, to wit, one month, and that the said defendant, on the day and year aforesaid, and on divers other days and times between said day and the day of the finding of this indictment, at said Warwick, unlawfully and injuriously did boil, and cause to procure to be boiled, in a certain boiler, divers large quantities of bones, blood, flesh, entrails and offal of beasts, by reason of which said premises divers noisome, offensive, and unwholesome smells, smokes, and stenches, during the time aforesaid, were thence emitted and spread, so that the air then and there was and yet is greatly filled and impregnated with the said smokes, smells, and stenches, and was and is rendered and become corrupt, offensive, uncomfortable, and unwholesome, to the great damage and common nuisance of all the citizens of said State, and against the peace and dignity of the State.

Upon the trial of the case in the Common Pleas Division at the October session thereof in 1895, at East Greenwich, the defendant was found guilty in manner and form as charged in the indictment, whereupon he filed his petition for a new trial, which is now before us for decision.

The grounds of the petition, in so far as they are relied on in argument, are: (1) That the court erred in ruling out the license or permission granted to the defendant by the town council of said Warwick to locate his works at the place now occupied by him; and (2) that this proceeding by indictment cannot be used as the foundation for an order of abatement of the nuisance because the indictment does not allege a sufficient *continuando*, without which no order of abatement can issue.

The action of the town council in the premises, which was taken on March 10, 1884, was as follows: "The petition of Waldo E. Barnes, praying for the location of premises for the purpose of carrying on the business of bone-boiling and the manufacture of tallow and of chemical fertilizers, continued to this day, is taken up and read, and upon consideration, it appearing that public notice of the same has been duly given pursuant to order, and no person appearing to object, it is ordered that the premises described in said petition, viz., sixty acres of land belonging to George C. Arnold, lying back of Great Pond in Old Warwick woods, nearly a mile from any dwelling-house, and distant from any highway, be and they are hereby designated and established for said purpose."

The contention of the defendant is that the General Assembly had power to authorize, and by Pub. Stat. R. I. cap. 79, did authorize, town councils to license such acts as might be nuisances; and that the town council of said town of Warwick having granted to the defendant a license to do the acts complained of, he was entitled to offer that license in evidence to the jury, in order that they might pass upon the question whether he had done more than he was licensed to do; or, in other words, whether he was justified thereunder in maintaining and operating his works, even though they constituted a common nuisance. The defendant duly excepted to the rulings of which he now complains.

The provisions of Public Stat. R. I. cap. 79, which are material to the case, are sections 3, 4, 5, 6, 7, and 14, which are as follows:

"SEC. 3. The town councils of the several towns may

designate and establish the place or places where the business of slaughtering cattle and other animals shall be carried on, and thereby vest in the occupant or owner thereof a right to use and occupy the same, for the purposes aforesaid, until such right be withdrawn or suspended in the manner hereinafter provided, or until such use and occupancy be abated as a public nuisance.

SEC. 4.    Whenever, in the judgment of the town council of any town, the convenience or health of said town requires the withdrawal or suspension of the right of slaughtering provided for in the preceding section, the said town council may withdraw or suspend said right, first giving to the owner or occupant of such place or places two months notice, in writing, of their intention to withdraw or suspend the same.

SEC. 5.    Every person who shall, after notice given as aforesaid, commence or continue to carry on the business of slaughtering cattle or other animals in such place or places, shall be fined fifty dollars for every day during which he shall continue to carry on the same.

SEC. 6.    In case of the suspension or withdrawal by any town council of the said right to slaughter cattle or other animals, the said town shall be liable to the person to whom such right has been granted for any loss or damage resulting from such suspension or withdrawal, to be recovered by action in a special court of common pleas, in the manner provided by law for cases within the jurisdiction of said court.

SEC. 7.    Whenever the town council of any town shall have designated and established therein a place in which the business of boiling bones, depositing filth, keeping swine, or slaughtering cattle or other animals may be carried on, as herein provided, every person who shall carry on such business in any other place shall be fined fifty dollars for each day on which he shall carry on the same.

SEC. 14.    The provisions of sections three, four, five, and six of this chapter shall extend to the place of any manufacture of, or working in, any article or substance the manufacture of which shall be deleterious to the health of the neighborhood : *Provided*, that prior to any action of the town

council under this section, public notice of the pendency of any petition therefor shall be given in such mode and for such time as said council shall prescribe."

It is clear, from the foregoing provisions, that the General Assembly has delegated to town councils the power of regulating the carrying on of the kinds of business therein enumerated, in so far at any rate as the location thereof is concerned ; and that when once located in accordance with the permission given by the town council, the owner of the business acquires certain rights in said location which cannot be taken away from him without making compensation therefor, unless, at any rate, the use and occupancy of the premises be abated as a public nuisance. Having thus granted to town councils the power of location, it follows, we think, that the business to be carried on at such place, being such as is specified by the statute, cannot be held to be a public nuisance, so long, at any rate, as the licensee keeps strictly within the terms of his license and conducts his business in a reasonably careful and proper manner, for the reason that what is authorized by law cannot be held to be a *public* nuisance. *Johnson* v. *Providence & Springfield Railroad,* 10 R. I. 365 ; *Redford* v. *Coggeshall, City Treasurer,* 19 R. I. 313 ; *Baptist Church* v. *Railroad Co.,* 6 Barb. p. 318 ; *Davis* v. *Mayor, &c.,* of *New York,* 14 N. Y. at p. 515 ; *Easton et al.* v. *Railway Co.,* 24 N. J. Eq. 55. And, further, we fail to see that the State can punish one of its citizens for doing an act which it has itself authorized him to perform. *Stoughton* v. *The State,* 5 Wis. 291.

The chapter of the statute from which the above-named sections are quoted evidently deals with and permits occupations which are of themselves nuisances when carried on in any ordinary community, and as such would render the proprietors thereof liable to indictment and punishment. The chapter itself is entitled "OF NUISANCES;" and while this is by no means controlling, yet it is at least suggestive. It recognizes the fact that the slaughtering of cattle and other animals, the boiling of bones, depositing filth, keeping swine, manufacturing or working in articles the manufacture of

which is deleterious to the health of the neighborhood, and various other things, are nuisances if carried on in an ordinary community; and in view of this fact it seeks to isolate the carrying on of such business, as was evidently done by the town council in this case, so as to render it as little inconvenient and hurtful to the public as possible. If the business mentioned in said chapter, if carried on without a license, did not constitute a nuisance, there would be no occasion for obtaining a license or permission to carry it on in some place to be designated by the town council, for it could be carried on anywhere; and therefore, unless the language is treated as authorizing those acts which would otherwise constitute a nuisance, the statute is without force or meaning.

We think it is competent for the General Assembly to authorize and sanction an act or state of affairs which, but for such authorization, would constitute a public nuisance; and that when a person is authorized by law to engage in a particular business at a designated place, he is not liable to indictment and punishment for the consequences which may flow from the exercise of such authority, provided, always, that he keeps strictly within the terms of his license, or permission, and does only the things contemplated by the act under which he is licensed, in a careful and proper manner. 16 Am. & Eng. Ency. L. 1000, and cases in note 4; Wood on Nuisances, 1 ed. § 746, and cases cited; *Com.* v. *Boston,* 97 Mass. 555; *Garrett* v. *State,* 49 N. J. L. 101. It is to be observed, however, as well stated in 16 Am. & Eng. Ency. L. p. 1001, "that courts look with jealousy upon such legislative indulgence, and hold the parties so favored to a strict observance of the limitations of their authority; and if their acts create what ordinarily would be a nuisance, and what cannot be clearly shown to be the natural and probable result of the privilege, or if by another method of proceeding the authorized object could have been accomplished without creating the nuisance, they cannot rely for protection upon the statutory authority. It is considered that such consequences were not contemplated by the legislature."

Mr. Wharton, in his work on Criminal Law (Vol. 2, 8 ed.

§ 1424), states the law as follows: "Lawful authority to do a particular thing is no defence to an indictment for doing such thing so negligently or badly as to create a nuisance. But if the license be strictly followed, and a nuisance results, no prosecution can be maintained, where there is no negligence or evil intent alleged on part of the defendant. Hence a gas company. duly chartered by an act of legislature to supply gas to a city, cannot be convicted of nuisance when the acts complained of were necessary to the exercise of its trust and were performed carefully and judiciously. The same distinction applies, *mutatis mutandis*, to railroads."

*The People* v. *N. Y. Gas Light Company*, 64 Barb. 55, is an instructive case upon the question before us. There it was held that when the legislature has authorized a corporation to manufacture gas, and the company in pursuance of such authority has proceeded to erect gas-works and to make and distribute gas therefrom, it is not liable to indictment for creating a *nuisance* by unwholesome smells, smokes, and stenches rendering the air corrupt and unwholesome, where it is considered that the building and processes of the company are of the best and that it has used due care and diligence in the business. In delivering the opinion of the court, Leonard, J., said: "The power of the legislature is omnipotent, within constitutional limits. It is sufficient to authorize railroads to be run through crowded thoroughfares, with locomotives, causing great disturbance to the citizens who reside near them, and exposing their residences and property to constant danger of fire from the sparks emitted from the engines. If unauthorized by statute, these acts would be a nuisance. The same power can authorize dams to be constructed and maintained, for public purposes, although they may render the common air we breathe unwholesome, producing, thereby, disease and death in their vicinity. The good of the greatest number is regarded by the legislature as its justification for the extraordinary use of its power.

If the railroad is carried on with the greatest skill and care, with every improvement and advantage known to science and experience, it is not a nuisance, although many are injured

in property and personal security. (*Davis* v. *The Mayor, &c., of New York*, 14 N. Y. 526; *Rex* v. *Pease*, 4 Barn. & Ad. 30; *Harris* v. *Thompson*, 9 Barb. 350.)

It may be that private persons can maintain an action for damages, as in *Carhart* v. *Auburn Gas Light Co.*, 22 Barb. 297; but the *people* are barred by the act which the legislature have passed, from making a public complaint, by an indictment, for such a cause, while the defendants conduct their business with skill, science, and care." See also *Quinn* v. *Electric Light Corporation*, 140 Mass. 106.

To the same general effect are the cases of *Miller* v. *Mayor of New York*, 109 U. S. 385; *Butler* v. *The State*, 6 Ind. 165, and *Garrett* v. *State*, 49 N. J. L. at page 101.

The law applicable to the case at bar, then, being as above stated, we are of opinion that the Common Pleas Division should have permitted the doings of the town council of Warwick, in the premises, to be offered by the defendant for the purpose of showing that, in so far as the location of his works was concerned, he was acting under lawful authority, and hence that the State could not complain thereof. If, however, it shall be made to appear that the defendant was conducting his business in a negligent and improper manner, *thereby* creating a public nuisance, then he may lawfully be prosecuted and punished therefor, notwithstanding the license aforesaid; for, as before intimated, it cannot be presumed that *such* consequences were contemplated by the General Assembly in the granting, or authorizing the granting, of the permission in question.

As to the second point, we are of opinion that the indictment does allege a sufficient *continuando* to warrant an order of abatement in case the defendant shall be found guilty. In this connection it is pertinent to remark, however, that an order for the abatement of a nuisance is not a necessary part of the judgment thereon, and hence that the indictment need not necessarily be laid with such a *continuando* as would warrant an order of abatement in case of conviction. See *Commonwealth* v. *Chemical Works*, 16 Gray, 231; 1 Bish. Crim. Law, 7 ed. § 1079.

Petition for new trial granted.

*Charles F. Stearns, Assistant Attorney-General,* for the State.

*James Harris* and *James C. Collins, Jr.,* for defendant.